ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Nancy Hall, individually and as the Representative and Administratrix of the Estate of Tommy Hall, deceased, her husband,<br>          Plaintiff, | : : : : : : | CIVIL ACTION - LAW |
| | : | 1:01-CV-1265 |
| CUNA Mutual Group, Cuna Mutual Insurance Society,<br>          Defendants. | : : : | Judge Sylvia H. Rambo |

FILED
HARRISBURG
MAR 26 2002
MARY E. D'ANDREA, Cl
Per_____
DEPUTY CLERK

**PLAINTIFFS' BRIEF IN SUPPORT OF ITS
MOTION TO AMEND THE COMPLAINT**

### I. STATEMENT OF FACTS

On or about November 18, 1998, Plaintiff, Nancy Hall, and her late husband, Tommy B. Hall, refinanced the mortgage on their home in Fayetteville, Franklin County, Pennsylvania. As part of refinancing the mortgage, Mr. Hall purchased mortgage insurance through his lender, Patriot Federal Credit Union. Defendant, CUNA Mutual Group and CUNA Mutual Insurance Society, issued a policy to the Patriot Federal Credit Union and to Mr. and Mrs. Hall.

On or about November 4, 1999, Mr. Hall died as a result of a metastatic melanoma. Within a few days thereafter, Plaintiffs submitted a claim for benefits under the group mortgage insurance policy. Defendants denied Plaintiffs' claim for benefits, asserting that Plaintiff's decedent had submitted a false application for mortgage insurance in that he had failed to disclose a prior doctor visit in 1993. Defendants improperly reported the conduct of Plaintiff's decedent to the Fraud Section of the Pennsylvania Department of Insurance.

## II. PROCEDURAL HISTORY

On July 9, 2001, Plaintiff Nancy Hall commenced this action, both individually and as the administratrix of the Estate of her late husband, by filing a Complaint against Defendants, CUNA Mutual Insurance Society and CUNA Mutual Group.

On March 15, 2002, Plaintiff filed a Motion to Amend the Complaint, seeking permission to allege, among other things, Defendants continued bad faith, negligence, breach of contract and other tortious conduct when the Defendants, despite a wide range of additional information, denied Plaintiffs' claims for benefits under the policy. The Court, in its initial Case Scheduling Order, allowed the parties until March 15, 2002, to amend the pleadings. This Brief is filed in support of Plaintiffs' Motion to Amend the Complaint. The proposed Amended Complaint is attached to the Motion itself, as Exhibit A.

## III. STATEMENT OF QUESTION INVOLVED

Whether Plaintiffs' Motion to Amend the Complaint should be granted.

## IV. ARGUMENT

In the instant action, Plaintiffs filed the original Complaint against Defendants, CUNA Mutual Insurance Society and CUNA Mutual Group on July 9, 2001. The Court, in the initial Case Scheduling Order, allowed the parties until March 15, 2002 to amend the pleadings. Plaintiffs filed, on March 15, 2002, a Motion to Amend the Complaint and attached to the Complaint a proposed and fully-executed Amended Complaint. The Amended Complaint was prepared following significant discovery in the case and presents additional facts obtained through the discovery process. The Amended Complaint includes, among other things, allegations that the Defendants received medical records, video depositions, deposition transcripts and other records which confirm that Mr. Hall was _not_ diagnosed with cancer before the insurance application was

made. The Amended Complaint asserts that the Defendants' continued conduct in denying benefits under these circumstances is outrageous.

Federal Rule of Civil Procedure 15(a) states that leave to amend shall be freely given when justice so requires. Furthermore, amendments may always be allowed to conform to the evidence, Federal Rule of Civil Procedure 15(b). In the present case, timely amendment has been sought. Justice requires that the Defendants be held accountable for their improper conduct in handling the initial claim and in continued denial of the claim despite overwhelming evidence, adduced during discovery, that the claim must be paid in that there was neither a diagnoses nor a treatment for cancer before the application was filed. Accordingly, Plaintiffs' Motion to Amend the Complaint should be granted.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Complaint be amended, and that Exhibit A, the Amended Complaint, be filed with the Court.

Respectfully submitted,

_____
Stephen R. Pedersen
214 Senate Ave., Suite 602
Camp Hill, PA 17011
(717) 763-1170

DATE: 3/25/02

# CERTIFICATE OF SERVICE

And now, this 26th day of March, 2002, I, Carleen S. Jensen, do hereby certify that I have, this date, served a true and correct copy of the within **PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION TO AMEND THE COMPLAINT** upon each of the attorneys of record at the following address(es) by sending same in the United States mail:

Michael R. Kelley, Esq.
Charles T. Young
100 Pine Street
P O Box 1166
Harrisburg, PA 17108-1166

Catherine Mahady-Smith, Esq.
3115-A N. Front Street
Harrisburg, PA 17110

DATE: 3-26-02

Carleen S. Jensen
Assistant to Stephen R. Pedersen, Esquire
214 Senate Avenue, Suite 602
Camp Hill, PA 17011
(717) 763-1170

I. D. No. 72026
Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NANCY HALL, individually and as the Representative and Administratrix of the Estate of TOMMY HALL, deceased, her husband,**<br>　　　　　　　Plaintiff,<br><br>**CUNA MUTUAL GROUP, CUNA MUTUAL INSURANCE SOCIETY,**<br>　　　　　　　Defendants. | CIVIL ACTION - LAW<br><br><br>1:01-CV-1265<br><br>Judge Sylvia H. Rambo |

## MOTION TO AMEND COMPLAINT

Plaintiffs, by and through undersigned counsel, hereby bring the instant Motion to Amend Complaint pursuant to Fed. R. Civ. P.15.

The instant motion is being timely filed within the Court's deadline for amending pleadings, set at March 15, 2002. The proposed Amended Complaint is attached hereto as Exhibit A and has been duly executed so it can be filed once the Motion is ruled upon.

The Amended Complaint adds no new parties. It does, however, add factual averments to conform to discovery and addresses the Defendants' continued refusal to pay benefits under the policy.

Accordingly, Plaintiff requests that the Motion to Amend Complaint be granted and that the Amended Complaint, attached to this Motion, be filed.

Respectfully submitted,

*/s/ Stephen Pedersen/*

Stephen R. Pedersen, Esq.
214 Senate Ave., Suite 602
Camp Hill, PA 17011
I. D. No. 72026

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY HALL, individually and as the Representative and Administratrix of the Estate of TOMMY HALL, deceased, her husband, | CIVIL ACTION - LAW |
| Plaintiff, | NO. 1:01-CV-1265 |
| vs. | |
| CUNA MUTUAL GROUP; CUNA MUTUAL INSURANCE SOCIETY, | JUDGE SYLVIA H. RAMBO |
| Defendants. | |

## AMENDED COMPLAINT

Plaintiff, Nancy Hall, individually and as the Administratrix and Representative of the Estate of her deceased husband, Tommy Hall, hereby brings an Amended Complaint against each of the Defendants, and avers as follows:

1. Nancy Hall is an adult individual who resides in Pennsylvania, and within the Middle District of Pennsylvania.

2. Nancy Hall is the Administratrix and personal representative of the Estate of Tommy Hall, her deceased husband, and the Estate and all Estate matters have been raised within the Middle District of Pennsylvania.

3. All of the events which give rise to the instant complaint took place between the Plaintiffs in the Middle District of Pennsylvania and each of the Defendants, by and through their office at 5910 Mineral Point Road, Madison, Wisconsin.

1

4. Accordingly, Plaintiffs aver and believe that each of the Defendants are entities domiciled in Madison, Wisconsin.

5. The Pennsylvania Corporation Bureau has provided a service address in Pennsylvania at 407 Parkway Drive, Erie, Pennsylvania, 16511, but has indicated that no CUNA service agents are registered in Pennsylvania.

6. Accordingly, and for these reasons, Plaintiff believes and avers that there is complete diversity of citizenship between the Plaintiff and the Defendants, CUNA Mutual Group and CUNA Mutual Insurance Society (hereinafter "CUNA").

7. The amount in controversy exceeds $250,000 and, accordingly, the Middle District of Pennsylvania is vested with diversity jurisdiction over this case.

8. On or about November 18, 1998, Mr. and Mrs. Hall completed a "Member's Home Mortgage Protection II Application." That application bore Certificate No. 32534 and was filled out truthfully and accurately by Mr. and Mrs. Hall.

9. Home mortgage insurance was purchased in the amount of $56,000 as stated on the Home Mortgage Protection Application. The lender, Patriot Federal Credit Union, completed a portion of the application indicating that the loan for the home closed on November 18, 1998 and the loan effective date was January 1, 1999.

10. At the time the application was made, Mr. and Mrs. Hall believed that Mr. Hall was in good health without any significant medical problems.

11. Prior to the application being filled out, in 1993, Mr. Hall had a mole removed from his back and the doctor reported to him at that time that there were no medical problems associated with the mole and that he was in good health.

12. On or about January 1, 1999, CUNA Mutual Group and CUNA Mutual Insurance Society issued a coverage schedule and a policy for mortgage insurance in the initial amount of decreasing term life of $55,951.79. This coverage and policy bore Certificate No. 00032534 and 037-1485-6.

13. The policy was effective from the date of the application.

14. On November 4, 1999, Mrs. Hall, through the Patriot Federal Credit Union Member Service representative, submitted a home mortgage insurance claim notice. On that notice, Mrs. Hall indicated that she was submitting a death claim effective November 4, 1999 for loan payments due following her husband's death.

15. Mr. Hall died on November 4, 1999 as a result of a fast-growing metastatic melanoma.

16. Prior to Mr. Hall's death, Mr. and Mrs. Hall only became aware of the melanoma in early 1999.

17. Despite a truthful application and the issuance of a Certificate of Insurance, CUNA Mutual Group and CUNA Mutual Insurance Society wrongfully denied payments and benefits under the policy.

18. After Mr. Hall died, each of the Defendants negligently, carelessly, wrecklessly and in wanton disregard for their insured's interest and in bad faith refused to pay benefits under the policy.

19. In a letter dated February 10, 2000, the Defendants indicate that they were denying benefits because Mr. Hall had visited a doctor in 1993. In the February 10, 2000 letter, the Defendants state that no benefits will be paid on this contract either now or in the future.

20. In wrongfully denying benefits under the contract, and in withholding monies due on the contract, and without proper and thorough investigation, the Defendants breached their contract with the Halls, breached an implied covenant of good faith and fair dealing, acted in bad faith, were negligent in their handling of the claim process, and intentionally denied benefits at a time when the Defendants each knew that benefits were required to be paid under the policy.

21. At the time of initial denial of benefits and rescission of the policy, CUNA negligently, carelessly, in violation of the contract, wrecklessly and in bad faith failed to properly consider, among other things, the following:

(a) Signed statement from Mr. Hall that he had not been treated or diagnosed with cancer prior to the application;

(b) The 1993 pathology report revealing "dysplastic nevus", which CUNA knew to be a non-cancerous finding and which CUNA had in their claim filed;

(c) Information obtainable from Mr. Hall's treating doctors, including but not limited to Dr. Hurley, Dr. Charlesworth, Dr. Cashdollar, Dr. Enders, Dr. Chicklo and others, all of whom would have confirmed that Mr. Hall had not been treated or diagnosed with cancer prior to the application;

(d) The hospital surgical records where the mole was removed;

(e) Information Mrs. Hall had, including the video deposition of her husband taken before he died, wherein he testified under oath that he did not become aware of the cancer until after the application.

22. Shortly after the Complaint was filed, CUNA received additional information which it failed to timely and appropriately consider and continued, despite the information, to

4

deny benefits under the policy, negligently, intentionally, carelessly, in violation of the contract, wrecklessly, in wanton disregard for their insured's interest, and in bad faith as they failed to pay on the policy when they received, among other things, the following:

    (a)    Medical records and work release from Dr. Hurley showing no cancerous findings in 1993;

    (b)    Deposition transcript from Dr. Hurley, stating no cancerous finding in 1993;

    (c)    Deposition transcripts from pathologists who reviewed the 1993 slides, stating no cancerous findings in 1993.

    (d)    Two deposition transcripts and a sworn videotape deposition of Mr. Hall taken before his death in which Mr. Hall states, under oath, he was not aware of cancer before January, 1999;

    (e)    Voluminous medical records of Mr. Hall revealing no diagnosis and treatment for cancer prior to January, 1999;

    (f)    Dr. David Weinreich of Bethesda, Maryland, provided an Attending Physician's Statement wherein he indicated that Mr. Hall's first symptoms appeared in January, 1999;

    (1)    Dr. Weinreich further indicated that the patient had never before had the same or similar condition and that the diagnosis was metastatic melanoma;

    (2)    The doctor indicated that the date of the first visit was in January, 1999 and the last visit at the time he filled out the Attending Physician's Statement was September 30, 1999;

(3) The doctor further indicated that the melanoma was a rapidly-progressive disorder and that the patient had not been hospitalized up to that point.

23. During discovery in the instant action, despite the additional information, among other things which follow, CUNA has continued negligently, carelessly, intentionally, wrecklessly, in violation of the contract and insurance laws, in wanton disregard for their insured's interests, and in bad faith and unconscionably continue to deny benefits and make payment under the policy. CUNA discovered:

(a) Testimony from treating doctors that it would be an abuse of their records to imply or infer that Mr. Hall knew he had cancer prior to December, 1998;

(b) No evidence or records exist which prove a diagnosis or treatment of cancer prior to December, 1998;

(c) Treating doctors provided an explanation that the link between the 1993 mole and the subsequent diagnosis of malignant melanoma in 1999 was not made until early 1999, after the insurance application had already been submitted to and approved by CUNA;

(d) Depositions from CUNA's own employees that the critical document in determining the diagnoses of cancer is a pathology report, that the only pathology report relevant to CUNA's inquiry is the 1993 pathology report and that the 1993 pathology report reveals dysplastic nevus, a non-cancerous finding.

(e) Other discovery, including but not limited to all the depositions taken, including those of CUNA's own employees, which establish CUNA's negligent, grossly negligent, intentional, systemic bad faith, bad faith, breach of contract, wanton and wreckless conduct, blatant disregard for their insured's interest, breach of implied covenants of good faith and fair

6

dealing and other common law and statutory violations.

24. In addition, on February 22, 2000, the Defendants wrote to Mrs. Hall and indicated wrongfully, negligently, intentionally, wantonly, carelessly and recklessly that they were reporting the matter to the Pennsylvania Insurance Fraud Section.

25. The Pennsylvania Attorney General's Office responded to the referral within one month, indicating that no investigation would take place.

26. CUNA, through its policies and practices, customs and habits, decided not to inform Mrs. Hall that no criminal investigation would take place.

27. CUNA failed to properly investigate the claim prior to the referral and acted in bad faith and in intentional disregard to their insured's interest when they, among other things:

   (a) Reported a dead person for criminal prosecution, knowing no prosecution could take place;

   (b) Wrote to Mrs. Hall, the surviving spouse, to intimidate and frighten her from pursuing her claim for benefits;

   (c) Failed to properly fill out the referral form, knowing as a result no investigation would take place;

   (d) Systemically used the criminal referral process to wrongfully and in bad faith frighten the insured from pursuing valid claims.

28. As a result of all of the conduct described above, and the Defendants' breach of contract, intentional and negligent misrepresentations, bad faith, negligence, fraud, deceit, and violations of their duties of good faith and fair dealing, Mrs. Hall and the Estate lost the family residence. Mrs. Hall was mentally and emotionally traumatized, suffered mental anguish and

torment and, because of financial necessities resulting from the Defendant's wrongful conduct, is working as a live-in maid, and claim is made for each and every loss.

29. CUNA has systemically acted in bad faith and breached their contracts with insureds as they received and accepted group credit life insurance premiums at one rate, yet when claims are made, they are investigated based on individual life applications, for which rates are determined differently.

30. In so doing, CUNA is attempting to increase profits in one line of business by applying principles from another line of business only when claims are made.

31. This conduct wrongfully, negligently, wrecklessly, intentionally, in bad faith and in breach of the insurance contract, deprived Plaintiff of the family home, caused economic and non-economic loss, pain and suffering and other damages.

32. Plaintiffs seek punitive and exemplary damages, as allowed under Pennsylvania's Bad Faith Statute, as allowed by law and equity.

33. Plaintiff has suffered and seeks full compensatory, economic and non-economic damages, as allowed in law and equity.

34. Plaintiff has suffered and seeks all contractual damages allowed in law and equity.

35. Plaintiff seeks interest, costs and attorney's fees, as allowed by law.

WHEREFORE, Plaintiffs seek judgment against the Defendants for compensatory, contractual, extra-contractual, economic and non-economic damages, pain and suffering, emotional trauma and all damages allowed in law and equity and punitive and exemplary damages as allowed by law, costs, interest and attorney's fees in an amount in excess of $1,000,000.00

Respectfully submitted,

DATE: 3/15/02

*[signature]*

Stephen R. Pedersen, Esq.
214 Senate Avenue, Suite 602
Camp Hill, PA 17011
I. D. No. 72026
(Co-counsel for Plaintiffs)

AND

Catherine Mahady-Smith, Esq.
3115-A N. Front Street
Harrisburg, PA 17110
(Co-counsel for Plaintiffs)

## CERTIFICATE OF NON-CONCURRENCE

Plaintiff's counsel has duly notified defense counsel of Plaintiff's intention to file the attached Amended Complaint. They do not concur in the motion.

*[signature]*

Stephen R. Pedersen, Esquire
214 Senate Avenue
Suite 602
Camp Hill, PA 17011
(717) 763-1170

I. D. No 72026
Counsel for Plaintiff

# CERTIFICATE OF SERVICE

And now, this 15th day of March, 2002, I, Carleen S. Jensen, do hereby certify that I have, this date, served a true and correct copy of the within **PLAINTIFF'S MOTION TO AMEND COMPLAINT** upon each of the attorneys of record at the following address(es) by sending same in the United States mail:

Michael R. Kelley, Esq.
Charles T. Young
100 Pine Street
P O Box 1166
Harrisburg, PA 17108-1166

Catherine Mahady-Smith, Esq.
3115-A N. Front Street
Harrisburg, PA 17110

DATE: 3-15-02

Carleen S. Jensen
Assistant to Stephen R. Pedersen, Esquire
214 Senate Avenue, Suite 602
Camp Hill, PA 17011
(717) 763-1170

I. D. No. 72026
Counsel for Plaintiff