

ORIGINAL

FILED
HARRISBURG, PA

APR 10 2002

MARY E. D'ANDREA, CLERK
Per ______ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Nancy Hall, individually and as the Representative and Administratrix of the Estate of Tommy Hall, deceased, her husband, Plaintiff** | : | **CIVIL ACTION - LAW** |
| **v.** | : | **1:01-CV-1265** |
| **Cuna Mutual Group, Cuna Mutual Insurance Society, Defendants** | : | **Judge Sylvia H. Rambo** |

---

**APPENDIX TO**
**DEFENDANT CUNA MUTUAL INSURANCE SOCIETY'S**
**BRIEF IN OPPOSITION TO PLAINTIFF'S**
**MOTION TO AMEND THE COMPLAINT**

---

Michael R. Kelley
Charles T. Young, Jr.
McNees Wallace & Nurick LLC
P.O. Box 1166
100 Pine Street
Harrisburg, PA 17108-1166
Phone: (717) 237-5322
Fax: (717) 237-5300

Dated: April 10, 2002

Exh A



H

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Eric SLATER
v.
LIBERTY MUTUAL INSURANCE CO.

No. CIV. A. 98-1711.

March 30, 1999.

*MEMORANDUM ORDER*

WALDMAN.

*1 Presently before the court is plaintiff's motion for leave to amend his complaint in this insurance bad-faith case.

Plaintiff has alleged that defendant acted in bad faith in handling plaintiff's first-party underinsured motorist claim. He asserted a claim pursuant to 42 Pa.C.S.A. § 8371.

Discovery in this action has been rather contentious, requiring court intervention in situations which counsel ordinarily are able to resolve without court involvement. Plaintiff now seeks to amend his complaint to add a further allegation of bad faith conduct by defendant based on its alleged discovery abuses in the instant litigation. Plaintiff complains specifically that defendant withheld material documents, raised insupportable objections to discovery requests, delayed in producing discoverable material, failed to produce pertinent material within the discovery deadline and failed to produce materials within the time promised by defense counsel.

Motions for leave to amend are committed to the sound discretion of the trial court. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1982). While leave to amend is generally given freely, it may be denied when the proposed amendment would be futile. *Id.*

The Pennsylvania legislature enacted § 8371 to provide a cause of action against insurers for bad faith conduct. *See Polselli v. Nationwide Mut. Fire Ins. Co.,* 23 F.3d 747, 750 (3d Cir.1994). The statute, however, does not contain a definition of "bad faith." Bad faith claims are generally predicated on an insurer's failure to pay the proceeds of an insurance policy. The statute is implicated, however, by any bad faith breach of a fiduciary or contractual duty owed to an insured by an insurer by virtue of the issuance of an insurance policy. It is quite another matter to permit a recovery under § 8371 for discovery abuses by an insurer in a bad-faith action in which the insurer and the insured are legal adversaries.

Plaintiff relies on *Cowden v. Aetna Cas. and Surety. Co.,* 389 Pa. 459, 134 A.2d 223 (Pa.1957) and *Weiner v. Targan,* 100 Pa.Super. 278 (1930) to argue that the performance or competence of counsel is relevant to a claim that an insurer breached a duty to act in good faith. Plaintiff's reliance is totally misplaced. Those cases involved the performance of counsel appointed to represent an insured by an insurer in fulfilling its duty to defend the insured. They do not involve the performance of counsel for the insurer in defending a claim asserted against it by an insured.

Plaintiff also relies on cases in which an attorney has been characterized as an agent of his client. As a general proposition, this is true. As a result, a client may often be bound by acts or representations of his lawyer. This, however, has nothing to do with the capacity in which an insurer confronts an insured or the reach of § 8371. [FN1]

FN1. It is also worth noting that a client generally is not liable for his attorney's abuses in conducting litigation unless the client himself is at fault. *See, e.g., Republic of the Philippines v. Westinghouse Elec. Corp.,* 43 F.3d 65, 74 (3d Cir.1994).

*2 Section 8371 provides a remedy for bad-faith conduct by an insurer in its capacity as an insurer and not as a legal adversary in a lawsuit filed against it by an insured. The court is confident that the legislature did not contemplate a potentially endless cycle of § 8371 suits, each based on alleged discovery abuses by the insurer in defending itself in the prior suit. [FN2]

FN2. To the extent discovery delays or abuses increase the cost of litigating a § 8371 claim, of course, the insured may be compensated. *See* 42

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Pa.C.S.A. § 8371(3); *Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 236 (3d Cir.1997).

Insofar as the Court in *Rottmund v. Continental Assur. Co.,* 813 F.Supp. 1104, 1109 (E.D.Pa.1992) suggested that discovery abuse by an insurer in bad faith litigation may itself support a § 8371 claim, this court cannot agree essentially for the reasons set forth in *Shoemaker v. State Farm Mut. Automobile Ins. Co.,* No 44998 S 1990, 118 Dauph. Co. 193 (Com. Pl. Dauphin Co.1998). The Court in *Shoemaker* denied the plaintiffs' motion to amend their § 8371 complaint to add a claim for bad faith discovery abuses during the pending litigation. The Court noted that the alleged bad faith in conducting discovery was "independent of the contract of insurance," and did not arise from the parties' "insurer-insured relationship" but from their "relationship as litigants." *Id.* at 197. [FN3] *See also* Tina Oberdorf, *Bad Faith Insurance Litigation in Pennsylvania: Recurring Issues Under Section 8371,* 33 Duq.L.Rev. 451, 467-68 (1995) (§ 8371 is directed at bad faith conduct in context of fiduciary relationship between insurers and insureds and does not encompass sanctionable litigation tactics of insurer in defending itself in action initiated by insured).

FN3. This does not mean that an insurer cannot be liable for bad faith conduct arising in the insurer-insured relationship which happens to occur during the pendency of an action, or for initiating an action against an insured in a bad faith effort to evade a duty owed under a policy.

The court believes that the Pennsylvania Supreme Court would not hold that § 8371 permits a recovery for discovery abuses by an insurer or its lawyer in defending a claim predicated on its alleged prior bad faith handling of an insurance claim.

ACCORDINGLY, this day of March, 1999, upon consideration of plaintiff's Motion to Amend the Complaint to Include Allegations of Continuing Bad Faith in the Form of Defense Counsel's Discovery Practices in This Case (Doc. # 48), and defendant's response thereto, IT IS HEREBY ORDERED that said Motion is DENIED.

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 Pa. Super. LEXIS 204 printed in FULL format.

JANET RIDGEWAY, EXECUTRIX OF THE ESTATE OF BYRON A. RIDGEWAY, Appellee v. U.S. LIFE CREDIT LIFE INSURANCE COMPANY, Appellant
No. 192 WDA 2001
SUPERIOR COURT OF PENNSYLVANIA
2002 PA Super 54; 2002 Pa. Super. LEXIS 204

October 2, 2001, Argued
February 28, 2002, Filed

PRIOR HISTORY: [**1]

Appeal from the Order entered on September 21, 2000, in the Court of Common Pleas of Beaver County, Civil Division, at No. 10559 2000. Before STEEGE, J.

DISPOSITION: Order reversed. Case remanded for the trial court to enter an order sustaining appellee's preliminary objections and dismissing complaint with prejudice.

CASE SUMMARY

PROCEDURAL POSTURE: Defendant life insurer sought interlocutory review of an order of the Beaver County Common Pleas Court, Civil Division (Pennsylvania), denying its preliminary objections in the nature of a demurrer to plaintiff executrix of an insured's estate's action based on the insurer bad faith pursuant to *42 Pa. Cons. Stat. § 8371*.

OVERVIEW: The executrix's late husband had been insured under a mortgage life insurance policy. After his death, when the insurer refused to pay the amount due, the executrix obtained a judgment against it for the amount owed plus various statutory penalties under the insurer bad faith statute, *42 Pa. Cons. Stat. § 8371*. When the insurer delayed paying the judgment, the executrix sought to bring a second bad faith action, but the appeals court held that she could not maintain a second action. The plain language limited the statute's applicability to causes of action arising under a contract of insurance, and the insurer's debt to the executrix was now a judgment debt, properly collectible by writ of execution or in a suit for breach of contract to pay a judgment debt.

OUTCOME: The court reversed the interlocutory order and remanded with directions that the trial court sustain the insurer's preliminary objections and dismiss the executrix's action with prejudice.

CORE TERMS: insurer, insured, demurrer, insurance policy, settlement, plain meaning, cause of action, action arising, permission, happening, common law cause, faith action, initiated, originate, handling, spring, dicta, interlocutory order, breach of contract, agreed to pay, set forth, coverage, post-settlement, post-judgment, beneficiary, indemnify, compelled, mortgagee, certify, premium

CORE CONCEPTS -

Civil Procedure: Appeals: Appellate Jurisdiction: Interlocutory Orders
See *42 Pa. Cons. Stat. § 702(b)*.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action
A demurrer can only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief. For the purpose of testing the legal sufficiency of the challenged pleading, a preliminary objection in the nature of a demurrer admits as true all well-pleaded, material, relevant facts and every inference fairly deducible from those facts. The pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action
Since the sustaining of a demurrer results in a denial of the pleader's claim or a dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. If the facts as pleaded state a claim for which relief may be granted under any theory of law, then there is sufficient doubt to require the preliminary objection in the nature

of a demurrer to be rejected.

Governments: Courts: Judicial Precedents
When presented with an issue for which there is no clear precedent, the role of a Pennsylvania superior court as an intermediate appellate court is to resolve the issue as it predicts the Supreme Court of Pennsylvania would do.

Insurance Law: Bad Faith & Extracontractual Liability: Payment Delay
Insurance Law: Bad Faith & Extracontractual Liability: Statutory Damages & Penalties
*42 Pa. Cons. Stat. § 8371* provides a remedy for the victims of an insurance company's bad faith.

Governments: Legislation: Construction & Interpretation
When a court interprets a statute, it must not pursue statutory construction where the intent of the legislature is clear from the plain meaning of the statute. *1 Pa. Cons. Stat. § 1921(b)*. When the words of a statute are free from all ambiguity, the court must not disregard the letter of the law under the pretext of pursuing its spirit. Thus, in construing a statute, the court first examines the plain meaning of the statute.

Insurance Law: Bad Faith & Extracontractual Liability: Punitive Damages
Insurance Law: Bad Faith & Extracontractual Liability: Statutory Damages & Penalties
See *42 Pa. Cons. Stat. § 8371*.

Governments: Legislation: Construction & Interpretation
A Pennsylvania superior court must interpret a statutory section, where possible, by the plain meaning and common usage of the words. *1 Pa. Cons. Stat. § 1903(a)*.

Governments: Legislation: Construction & Interpretation
To determine the plain meaning of a statutory phrase, a Pennsylvania superior court refers to the dictionary definitions of the words used.

Insurance Law: Bad Faith & Extracontractual Liability
Governments: Legislation: Construction & Interpretation
For purposes of *42 Pa. Cons. Stat. § 8371*, the phrase "in an action arising under an insurance policy" means that an insured's cause of action must originate from a writing setting forth an agreement between the insured and insurer that the insurer would pay the insured upon the happening of certain circumstances.

Insurance Law: Bad Faith & Extracontractual Liability
Pennsylvania does not recognize a common law cause of action for bad faith by insurance companies in the handling of insureds' claims.

Insurance Law: Bad Faith & Extracontractual Liability
The purpose of *42 Pa. Cons. Stat. § 8371* is to provide a statutory remedy to an insured when the insurer denies benefits in bad faith. The express language and purpose of the provision makes it clear that the intent is to protect an insured from bad faith denials of coverage. The duty to act in good faith stems from the insurer's fiduciary status under the insurance contract, which gives the insurer the right to handle claims and control settlement.

Insurance Law: Bad Faith & Extracontractual Liability
Once settlement has been reached or a judgment has been entered against the insurer, the insurer's fiduciary duty as insurer is extinguished for purposes of *42 Pa. Cons. Stat. § 8371*.

Civil Procedure: Entry of Judgments: Enforcement & Execution: Writ of Execution
Generally, in Pennsylvania, judgments are enforced by a writ of execution pursuant to Pa. R. Civ. P. 3102.

Civil Procedure: Costs & Attorney Fees: Judgment Interest
See *42 Pa. Cons. Stat. § 8101*.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action
Civil Procedure: Appeals: Remittitur to Trial Court
Where a Pennsylvania superior court reverses an order of a trial court denying preliminary objections relating to whether a party may go forward with a cause of action, the proper procedure is for the case to be remanded to the trial court for proceedings consistent with the reviewing court's opinion.

COUNSEL: S. Asher Winikoff, Pittsburgh, for appellant.

Kelly M. Tocci, Aliquippa, for appellee.

JUDGES: Before DEL SOLE, P.J., LALLY-GREEN and TAMILIA, JJ. OPINION BY LALLY-GREEN, J.

OPINIONBY: Lally

OPINION:
OPINION BY LALLY-GREEN, J.:

[*P1] This is an appeal by permission from the order of the Court of Common Pleas of Beaver County dated September 21, 2000, denying the preliminary objections of Appellant, U.S. Life Credit Life Insurance Company. We reverse and remand.

[*P2] The trial court summarized the facts of Appellee Janet Ridgeway's complaint as follows:

[Ridgeway] is the executrix of the estate of Byron A. Ridgeway (the "Decedent"), her late husband. [Appellant] is an insurance company. In January of 1995, [Appellant] issued a policy of mortgage life insurance under which the Decedent was the insured, a mortgagee was the first beneficiary, and [Ridgeway] was the second beneficiary. When the Decedent died in August of 1995, [Appellant] refused to pay the policy benefits. On August 19, 1996 at No. 11585 of 1996 in this court, [Ridgeway] was compelled to file an action (the "First Action") alleging breach of contract and[**2] bad faith conduct on the part of [Appellant].

In April of 1998, without [Ridgeway's] knowledge or consent, [Appellant] paid the sum of $ 53,768.02 directly to the mortgagee. At the time set for trial, in October of 1999, [Appellant] agreed to pay [Ridgeway] all damages arising out of the breach of contract claim ($ 18,964), and the case went to trial on the bad faith claim alone. Following a bench trial, on December 16, 1999 the trial court entered a verdict in the amount of $ 95,000 in favor of [Ridgeway] and against [Appellant].

The complaint in this case then sets forth a chronology of a series of dilatory tactics and steps taken by [Appellant] to avoid and forestall payment of the $ 18,964 which it had agreed to pay on October 26, 1999 and the $ 95,000 verdict entered against it on December 16, 1999. (No post-trial motions having been filed, judgment was entered on that verdict on January 20, 2000.) [Appellant] finally paid the $ 18,964 promised in October of 1999 on December 30, 1999. At first it made no response to requests by [Ridgeway's] counsel for payment of the $ 95,000 verdict, which was now reduced to judgment. On February 1, 2000, [Appellant's] [**3] counsel wrote [Ridgeway's] counsel, stating that the $ 95,000 judgment would be paid when [Appellant] had received from [Ridgeway] a certificate evidencing settlement and discontinuance of the First Action. Counsel for [Ridgeway] understandably refused to do that. [Ridgeway] was compelled to certify the docket of the First Action and transfer the judgment to the Circuit Court of Cook County, Illinois, the county in which [Appellant] is registered to do business. [Ridgeway] filed her complaint in this action on April 3, 2000. [Appellant] issued payment in the amount of $ 95,000 to [Ridgeway] and her attorney on or about April 10, 2000, one week later. The $ 95,000 judgment debt owing from the First Action was not paid until this action had been brought.

Trial Court Opinion, 2/9/01, at 2-4.

[*P3] Appellant filed preliminary objections in the nature of a demurrer to Ridgeway's complaint. The trial court denied those objections on August 9, 2000. Appellant petitioned the trial court to certify the August 9th order as appealable, at this Court's discretion pursuant to *42 Pa.C.S.A. § 702(b)*. n1 The trial court granted the petition. [**4] Appellant then filed a petition in this Court for permission to appeal the August 9th order under § 702(b). This Court granted the petition. Appellant filed a statement under Pa.R.A.P. 1925(b), and the trial court issued its opinion. This appeal followed.

n1 *42 Pa.c.S.A. § 702(b)* states:

(b) Interlocutory appeals by permission.- When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

[*P4] Appellant presents one issue for our review:

Whether Ridgeway, who[**5] secured a judgment in a bad faith action pursuant to *42 Pa.C.S.A. § 8371* against US Life, may maintain a second bad faith action against US Life for failure to pay that judgment.

Appellant's Brief at 5.

[*P5] Our standard of review in this case is as follows:

A demurrer can only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief. . . . For the purpose of testing the legal sufficiency of the challenged pleading a preliminary objection in the

nature of a demurrer admits as true all well-pleaded, material, relevant facts . . . And every inference fairly deducible from those facts. . . . The pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer. . . . Since the sustaining of a demurrer results in a denial of the pleader's claim or a dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. . . . If the facts as pleaded state a claim for which relief may be granted under any theory of law then there is sufficient doubt[**6] to require the preliminary objection in the nature of a demurrer to be rejected.

*Lumax Industries, Inc. v. Aultman, 669 A.2d 893, 894-895 (Pa. 1995).*

[*P6] Appellant presents an issue of first impression. "When presented with an issue for which there is no clear precedent, our role as an intermediate appellate court is to resolve the issue as we predict our Supreme Court would do." *Brown v. Candelora, 708 A.2d 104, 112 n.7 (Pa. Super. 1998)* (emphasis omitted).

[*P7] Ridgeway alleges that Appellant committed bad faith with respect to payment of the settlement reached in Ridgeway's prior lawsuit and, also, with respect to the payment of the judgment awarded Ridgeway for Appellant's prior bad faith. Ridgeway rests this argument on *42 Pa.C.S.A. § 8371*, which provides a remedy for the victims of an insurance company's bad faith. Appellant argues that this section cannot apply to suits initiated to collect on settlements or judgments.

[*P8] When a court interprets a statute, it must not pursue statutory construction where the intent of the legislature is clear from the plain meaning of the statute. *1 Pa.C.S.A. § 1921(b)*[**7] ; see also, *Ramich v. Worker's Comp. App Bd. (Schatz Electric, Inc.), 770 A.2d 318, 322 (Pa. 2001).* When the words of a statute are free from all ambiguity, we must not disregard the letter of the law under the pretext of pursuing its spirit. *Ramich, 770 A.2d at 322.* Thus, we first examine the plain meaning of the statute.

[*P9] Section 8371 reads:

§ 8371. Actions on insurance policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

*42 Pa.C.S.A. § 8371.* The controlling language for the present case is "in an action arising under an insurance policy." This phrase is not defined in the statute. Thus, we must interpret this section by the plain meaning and common usage of the words. [**8] *1 Pa.C.S.A. § 1903(a).*

[*P10] To determine the plain meaning of the phrase, we refer to the dictionary definitions of the above words. *Tyler v. Motorists Mutual Insurance Co., 779 A.2d 528, 531 (Pa. Super. 2001).* "Arise" is defined as "to come into being, action, or notice; originate; appear; spring up; to result or proceed; spring or issue." Webster's New Universal Unabridged Dictionary 113 (1996). "Insurance" is defined as:

the act, system, or business of insuring property, life, one's person, etc, against loss or harm arising in specified contingencies, as fire, accident, death, disablement, or the like, in consideration of a payment proportionate to the risk involved. Coverage by contract in which one party agrees to indemnify or reimburse another for loss that occurs under the terms of the contract; the contract itself, set forth in a written or printed agreement or policy.

Id. at 989. Black's Law Dictionary defines a "policy of insurance" as:

An instrument in writing, by which one party (insurer), in consideration of a premium, engages to indemnify another (insured) against a contingent loss, by [**9]making him a payment in compensation, whenever the event shall happen by which the loss is to accrue. Contract whereby insurer, in return for premiums, engages, on happening of designated event, to pay certain sum as provided. The written instrument in which a contract of insurance is set forth.

Black's Law Dictionary 1157 (Sixth Ed. 1990). Thus, the phrase "in an action arising under an insurance policy" means that the insured's cause of action must originate from a writing setting forth an agreement between the insured and insurer that the insurer would pay the insured upon the happening of certain circumstances.

[*P11] Here, Ridgeway is bringing an action as a judgment creditor, and not as a claimant under an agreement between Appellant and Ridgeway that Appellant would pay Ridgeway under the happening of certain circumstances. Thus, Ridgeway does not bring an "action under an insurance policy." Thus, Appellant's claim has merit under the plain meaning of Section 8371.

[*P12] Next, we look to the purpose of Section 8371 and relevant case law in order to determine if Ridgeway's position is consistent with the spirit of the statute. n2

n2 Section 8371 was drafted in response to our Supreme Court's decision not to create a common law cause of action for bad faith by insurance companies in handling claims of insureds. D'Ambrosio v. Pennsylvania National Mutual casualty *Insurance Co., 431 A.2d 966, 970 (Pa. 1981)* (no common law cause of action for bad faith by insurance companies in the handling of insureds' claims). The General Assembly responded with Section 8371, which provided the remedy sought by the insured plaintiff in *D'Ambrosio. O'Donnell v. Allstate Insurance Co., 734 A.2d 901, 905 (Pa. Super. 1995)* .

[**10]

[*P13] This Court has stated that the purpose of Section 8371 is:

To provide a statutory remedy to an insured when the insurer denied benefits in bad faith. Upon review of the express language and purpose of section 8371, it appears clear that the Pennsylvania legislature intended this section to protect an insured from bad faith denials of coverage.

*General Accident Insurance Co. v. Federal Kern per Insurance Co., 682 A.2d 819, 822 (Pa. Super. 1996).* The duty to act in good faith stems from the insurer's fiduciary status under the insurance contract, which gives the insurer the right to handle claims and control settlement. *Romano v. Nationwide Mutual Fire Insurance Co., 646 A.2d 1228, 1231 (Pa. Super. 1994).*

[*P14] The scope of Section 8371 has been extended to the investigatory practices of an insurer during litigation initiated by an insured to obtain the proceeds of his or her insurance policy. *O'Donnell v. Allstate Insurance Co., 734 A.2d 901 (Pa. Super. 1999)* (conduct of an insurer during litigation may be considered as evidence of bad faith under Section 8371). In dicta, the O'Donnell [**11] Court stated: "we find that the broad language of section 8371 was designed to remedy all instances of bad faith conduct by an insurer, whether occurring before, during or after litigation." *Id. at 906.* n3

n3 The Court held that Allstate had not committed bad faith during the litigation, but simply was acting within the proper sphere of a legal adversary. *Id. at 910.*

[*P15] The trial court in Appellant's case found O'Donnell to be dispositive. Trial Court Opinion, 2/9/01, at 4-5. We disagree. Even though O'Donnell's dicta suggests that the scope of Section 8371 includes post-litigation conduct, O'Donnell is distinguished on its facts because that court dealt only with bad faith that occurred during litigation of the insurance claim. O'Donnell, therefore, does not control Appellant's case.

[*P16] Here, Ridgeway is not suing to obtain proceeds from an insurance policy improperly denied her; she is suing to obtain payment on[**12] a settlement and judgment. Since O'Donnell does not control Ridgeway's case, the trial court erred in concluding that O'Donnell provides a cause of action for Appellant's alleged bad faith following a settlement and judgment.

[*P17] We now address whether Section 8371 should apply to post-judgment or post-settlement conduct by an insurer, even though the plain meaning does not permit such interpretation. Ridgeway argues that the spirit of the section is to provide a remedy for all bad faith by an insured, regardless of the circumstances. We disagree. We observe that the General Assembly limited the section by the prefacing phrase "arising under an insurance policy." Once settlement has been reached or a judgment has been entered against the insurer, the insurer's fiduciary duty as insurer is extinguished. Romano. Thus, the spirit and application of Section 8371 also ceases.

[*P18] Ridgeway's remedy for non-payment of the judgment is provided for by the Pennsylvania Rules of Civil Procedure for the enforcement of money judgments. n4 Also, Ridgeway may enforce her settlement agreement with Appellant pursuant to the law on contracts. *Mazzella v. Koken, 739 A.2d 531 (Pa. 1999)* [**13](generally, enforceability of settlement agreements is governed by principles of contract law). These methods of enforcement provide adequate protection to an insured who has settled with, and ob-

tained a money judgment against, her insurer for its bad faith conduct.

n4 Generally, judgments are enforced by a writ of execution pursuant to Rule 3102. Additionally, *42 Pa.C.S.A. § 8101* states that "a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award."

[*P19] Based on the foregoing, we hold that the scope of Section 8371 does not include post-judgment or post-settlement conduct by an insurer.

[*P20] Order reversed. Case remanded for the trial court to enter an order sustaining Appellee's preliminary objections and dismissing Ridgeway's complaint with prejudice. n5 Jurisdiction relinquished.

n5 Where we reverse an order of the trial court denying preliminary objections relating to whether a party may go forward with her cause of action, the proper procedure is for the case to be remanded to the trial court for proceedings consistent with our opinion. In re: *Adoption of Baby Boy Wims, 685 A.2d 1034, 1037 (Pa. Super. 1996).*

[**14]

Exh C

| | STATUTORY AMOUNTS | 1998 | 1999 | 2000 | 2001 |
|---|---|---|---|---|---|
| HMP Life | Direct Earned Premium (Written + Chg in UPR) | 2,722,278.05 | 2,968,665.87 | 3,154,484.88 | 3,215,318.93 |
| | Claims Paid | 977,856.79 | 790,773.30 | 909,351.89 | 1,031,744.42 |
| | Claim Reserve (without LAE) | 37,194.00 | 39,749.00 | 93,505.00 | 113,926.00 |
| | Policy Reserve | 3,192,949.00 | 3,554,841.00 | 4,084,760.00 | 4,523,957.00 |
| | Credit Union Reimbursement (Mort total split by prem) | 393,965.94 | 429,707.06 | 447,894.57 | 436,079.93 |
| | Experience Refund | - | - | - | - |
| | Oper. Exp. excl. CU Reimb. & Gov. (Mort total split by prem | 744,985.56 | 751,172.22 | 1,081,944.05 | 760,929.97 |
| | | | | | |
| | Policies in Force @ 12/31 | 1,233 | 1,303 | 1,331 | 1,311 |
| | Certificates in Force @ 12/31 | 9,472 | 9,764 | 9,877 | 9,601 |
| | Number of Claims Paid | 34 | 28 | 35 | 34 |
| | Number of Claims Denied | 0 | 0 | 3 | 1 |
| | Certificates Rescinded | 0 | 0 | 2 | 1 |
| | | | | | |
| MECL | Direct Earned Premium (Written + Chg in UPR) | 143,446,684.04 | 153,050,386.48 | 167,736,696.69 | 173,565,991.88 |
| | Claims Paid | 88,688,060.59 | 96,322,370.75 | 96,667,001.10 | 100,442,252.13 |
| | Claim Reserve (without LAE) | 13,254,000.00 | 12,114,000.00 | 16,281,000.00 | 14,514,000.00 |
| | Policy Reserve | - | - | - | - |
| | Credit Union Reimbursement | 22,960,789.00 | 25,127,336.00 | 29,203,901.00 | 30,257,305.00 |
| | Incurred Experience Refund | 4,526,128.00 | 5,726,378.00 | 6,917,827.00 | 10,904,152.00 |
| | Operating Expenses excl. CU Reimb. & Gov. | 25,235,115.86 | 26,837,094.29 | 22,258,914.64 | 16,491,090.87 |
| | | | | | |
| | Policies in Force @ 12/31 | NA | 5,759 | 5,726 | 5,578 |
| | Certificates in Force @ 12/31 | NA | 3,065,182 | 3,102,139 | 3,082,514 |
| | Number of Claims Paid | NA | 13,057 | 12,834 | 12,570 |
| | Number claims Denied | 670 | 816 | 871 | 935 |
| | Certificates Rescinded* | ? | ? | ? | ? |

* CUNA data systems are not designed to track rescisions and thus the information is not available. HMP rescisions were obtained by conducting a manual search. A manual search would not be practical for CL.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this date the foregoing document was served by U.S. first-class mail, postage prepaid, upon the following:

Stephen R. Pedersen, Esquire
214 Senate Avenue, Suite 602
Camp Hill, PA 17011

Catherine Mahady-Smith, Esquire
3115-A N. Front Street
Harrisburg, PA 17110

Charles T. Young, Jr.

Attorney for Defendants,
CUNA Mutual Group and CUNA Mutual
Insurance Society

Dated: April 10, 2002