





FILED
HARRISBURG, PA

OCT 0 4 2002

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Nancy Hall, individually and as the Representative and Administratrix of the Estate of Tommy Hall, deceased, her husband,** | : | **CIVIL ACTION - LAW** |
|                **Plaintiff** | : | |
| | : | |
| **v.** | : | **1:01-CV-1265** |
| | : | |
| **CUNA Mutual Group, CUNA Mutual Insurance Society,** | : | |
|            **Defendants** | : | **(Judge Christopher C. Conner)** |

## DEFENDANTS' REPLY BRIEF
### FILED IN RESPONSE TO PLAINTIFF'S OPPOSITION BRIEF[1]

On August 30, 2002, Defendants filed a Motion for Partial Summary

Judgment and supporting brief in this matter.  Plaintiffs filed an Opposition

---

[1]Plaintiff's Opposition Brief is formally entitled, "Plaintiff's Brief in Response to Defendants' Motion for Partial Summary Judgment and Plaintiff's Brief in Support of Its Motion for Partial Summary Judgment on the Contract Claim."

Brief on September 20, 2002.  This brief is submitted in reply to Plaintiff's

Opposition Brief.

## I.  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND HER OPPOSITION BRIEF ARE BOTH UNTIMELY.

Under the Court's Order of April 19, 2002, dispositive motions and

supporting briefs were due "no later than August 30, 2002."  (Order,

4/19/02, Rambo, J., at p.1, ¶5).  Plaintiff did not file any dispositive motions

or supporting briefs by August 30, 2002.  Rather, Plaintiff filed a Motion for

Partial Summary Judgment and supporting brief on  September 20, 2002 –

21 days **after** the deadline had passed.  This is a violation of the Court's

Scheduling Order.

In addition, Local Rule 7.6 requires that, "Any party opposing any

motion shall file an original and two (2) copies of a responsive brief . . .

within fifteen (15) days after service of the movant's brief."  Defendants filed

their Motion for Partial Summary Judgment and Brief on August 30, 2002.

Plaintiff did not file her Opposition Brief until  September 20, 2002 – 18

days after Defendants' Motion for Partial Summary Judgment was deemed

served pursuant to Federal Rule of Civil Procedure 6(e).  Accordingly,

Plaintiff's Motion for Partial Summary Judgment and Opposition Brief are

both untimely.  Plaintiff's Motion for Summary Judgment should be denied

as late, and the Opposition Brief should be disregarded.  Local Rule 7.6

states, "Any respondent who fails to comply with this rule shall be deemed

not to oppose such motion."

## II.    PLAINTIFF MISCHARACTERIZES BOTH THE CONTENTS OF  MR. HALL'S MEDICAL RECORDS AND THE NATURE OF CUNA'S RELIANCE ON THOSE RECORDS.

In her Opposition Brief, Plaintiff mischaracterizes both the contents of

Mr. Hall's medical records and the nature of CUNA's reliance on those

records.  There is no dispute that Mr. Hall suffered from, and ultimately

succumbed to, a malignant melanoma.  The issue is whether CUNA

reasonably believed that Mr. Hall knew about or had been diagnosed with

cancer prior to filling-out the CUNA Application in November, 1998.

Contrary to Plaintiff's representations, CUNA relies on post-Application

medical records only to the extent they show Mr. Hall suffered from cancer

prior to November, 1998.  There are at least ten (10) post-Application

medical records that contain references to cancer occurring prior to

November, 1998.  Those records are contained in Defendants' Appendix,

at Tabs "6D," "6E," "6F," "6G," "6H," "6I," "6J," 6K," "6L," and "6M."  In

addition, there are two (2) pre-Application medical records that refer to

cancer.  The pre-Application records are from Dr. Charlesworth, and they

are located in the Defendants' Appendix, at Tabs "6B" and "6C."   It is true

that most of these records were not created until after the date of the Application. But, they clearly state a history of cancer in 1993 and/or 1996, which is prior to the Application. It is reasonable for an insurer such as CUNA to conclude that if Mr. Hall's medical records note a history of cancer in 1993 and 1996 that Mr. Hall knew he had the disease. That is particularly true where, as here, several of records are medical intake forms in which a patient routinely relates his medical history to his new doctor.

In the face of the above evidence, Plaintiff states, "[CUNA] chose not to speak with Dr. Charlesworth, Dr. Cashdollar, Dr. Enders, Dr. Chicklo, Dr. Ramirez and Dr. Hoffman. Each of these doctors have been deposed and have testified that Mr. Hall had not been treated or diagnosed with cancer prior to the application." (Opposition Brief, at 5). Plaintiff further states, "CUNA Mutual also sought and obtained voluminous medical records and testimony from doctors who treated Mr. Hall in which they all confirm that Mr. Hall had no diagnosis or treatment for cancer prior to January, 1999." (Opposition Brief, at 6). The above statements by Plaintiff badly mischaracterize the evidence. The medical records confirm that Mr. Hall did have cancer prior to filling-out the Application with CUNA. In point of fact, Dr. Charlesworth specifically recalls a discussion between Mr. Hall and Mrs. Hall regarding a cancerous mole. (Defendants' Appendix, at "7,"

Dep. of Dr. Charlesworth, at 26-27).  This conversation occurred before Mr. Hall applied for insurance with CUNA.

Plaintiff would have this Court believe that all of the doctors in question simply copied the information in their records from some prior erroneous source.  This is not true.  At Page 19 of her Opposition Brief, Plaintiff states, "Mr. Hall did not tell Dr. Chicklo on January 15, 1999 that he had a cancerous mole excised from his back in 1993, but it is more likely that Dr. Chicklo extracted it from some reference in Dr. Charlesworth's records which was explained previously."  **There is no evidence to support this claim.**

Dr. Chicklo's intake sheet provided, in pertinent part, as follows:

mole <u>ca.</u>    Exc.  1993 [circled]                <u>Guthrie</u>

    on back

(Defendants' Appendix, at Tab "8A.")  Contrary to Plaintiff's assertions, Dr. Chicklo's secretary, Paula N. Statler, testified that Dr. Chicklo's office had not received Mr. Hall's medical records at the time the intake sheet was filled-out, and that the information came from the patient.  (*See* Defendants' Appendix, at Tab "9," Dep. of Statler, at 7).

Since Mrs. Hall did not accompany Mr. Hall to Dr. Chicklo's office, and Dr. Chicklo had not received any other medical records, the

information had to have come from Mr. Hall.  Dr. Chicklo himself circled the

year 1993 and indicated that the location of the mole was on Mr. Hall's

back.  (Defendants' Appendix, at Tab "8," Dep. of Chicklo at 12-13; Statler

Dep. at 7-8).

When Mr. Hall passed away in November, 1999 (less than 1 year

after the Policy's Effective Date), the cause of death was identified as

"Metastatic Melanoma."  (Defendants' Appendix, at Tab "4.")  By definition,

a <u>metastatic</u> melanoma is a malignant mole or tumor, which manifests itself

at a <u>secondary site</u> – the malignant cells having previously spread by way

of the lymphatic system, bloodstream, or some other avenue.  <u>Tabor's</u>

<u>Cyclopedic Medical Dictionary</u> 1181 & 1202 (18th ed. 1997).  Accordingly,

while Mr. Hall passed away after filling-out the Application, he had to have

suffered from cancer prior to filling-out the Application.

Plaintiff focuses all her attention on the pathology report for the mole

removed in 1993.  While the pathology report does not contain a finding of

cancer, it does call for follow-up due to the presence of a dysplastic nevus,

which is a risk factor for developing melanoma.  (Defendants' Appendix, at

Tab "15.")  Moreover, there are at least 3 separate references to moles

and/or the removal of cancer <u>in 1996.</u>  (Appendix, at Tab "6B," "6C," and

"6K.")  The original site of the metastatic melanoma could have occurred in

1993, in 1996, or at any other time prior to November, 1998.  The medical records indisputably contain repeated references to a history of cancer prior to the Application in November, 1998.  For Plaintiff to suggest otherwise is a misstatement of the facts.

### III.    THERE IS NO BASIS FOR LIMITING THE COURT'S INQUIRY TO THE DOCUMENTS IN CUNA'S POSSESSION AT THE TIME OF DENIAL.

Throughout her Opposition Brief, Plaintiff repeatedly directs the Court's attention to the documents in CUNA's possession at the time of the denial of benefits.  There is no basis for focusing on the documents in CUNA's possession at the time of denial, as opposed to the documents it later acquired.

In order to recover for bad faith, a plaintiff must show both that (1) his insurer did not have a reasonable basis for denying benefits under the policy and (2) his insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim.  Keefe v. Prudential Prop. and Cas. Ins. Co., 203 F.3d 218, 225 (3rd Cir. 2000).  The two elements are separate and independent.  If there is a reasonable basis for denying a claim, "even if it is clear that the insurer did not rely on that reason, there cannot, as a matter of law be bad faith."  Williams v. Hartford Cas. Ins. Co., 83 F.

Supp.2d 567, 574 (E.D. Pa. 2000), *affirmed without published opinion*, 261

F.3d 495 (3rd Cir. 2001).

It is CUNA's position that the information in its possession at the time

of the original denial is sufficient to justify the dismissal of the bad faith

claim.  But even if it is not, CUNA may rely on information obtained after its

original denial to thwart the bad faith claim.   During discovery in this case,

CUNA obtained the intake chart of Dr. Charlesworth, which states,

"Cancerous mole – removed   96."  (*See* Defendants' Appendix, at Tab

"7A.")  The intake chart was filled out in April, 1998 – prior to Mr. Hall's

execution of the CUNA Application.  While CUNA admittedly did not rely on

the intake chart in initially denying Mrs. Hall's claim, the intake chart is

nonetheless a record of cancer occurring before the Application.  Hence,

the chart – along with the other medical records – shows that CUNA did, in

fact, have a reasonable basis for its actions.  Under the law of bad faith, it

does not matter <u>when</u> the insurer obtains information to show that its

decision was reasonable, only that, at some time, the facts are obtained

which support the actions.

**IV.   IN CONTRAST TO A BREACH OF CONTRACT CLAIM, BAD FAITH REQUIRES CLEAR AND CONVINCING EVIDENCE THAT CUNA DID NOT HAVE A REASONABLE BASIS FOR ITS  ACTIONS AND KNOWINGLY OR RECKLESSLY DISREGARDED THAT LACK OF A REASONABLE BASIS.**

In her Opposition Brief, Plaintiff notes that CUNA has not filed a Motion for Summary Judgment on the breach of contract claim, and infers that CUNA is taking an inconsistent and untenable position with regard to the rest of the causes of action in the Amended Complaint.  (Opposition Brief, at 13).  There is no contradiction.  A breach of contract claim focuses on whether Mr. Hall had been diagnosed with, or knew he had cancer prior to filling-out the Application.  A bad faith claim does not require resolution of the issue of what Mr. Hall <u>actually</u> knew.  The resolution of the bad faith claim requires only the focus on whether <u>CUNA had a reasonable basis to believe</u> that Mr. Hall had been treated or diagnosed with cancer prior to his Application, and misrepresented this fact on the Application.  The medical records clearly indicate that Mr. Hall had previously been diagnosed with cancer.  The question is, was it reasonable for CUNA to rely on the medical records?  The answer is a resounding, **YES!**

Even assuming, *arguendo*, the validity of Plaintiff's theory that all of the doctors in question were simply copying from old medical records

(which is not true),[2] this demonstrates that the doctors were themselves

relying on the medical records -- without obtaining the pathology report.

(Defendants' Appendix, at Tab "11," Dep. of Dr. Cashdollar at 19-20;

Appendix, at Tab "8," Dep. of Dr. Chicklo at 23-26; Appendix, at Tab "13,"

Dep. of Dr. Enders at 15-19). Accordingly, it was not unreasonable for

CUNA to do the same.

Doctors' records are required to be legible and accurate. 49 Pa.

Code § 16.95. Moreover, statements made for purposes of medical

diagnosis or treatment are admissible into evidence. Fed. R. Evid. 803(4).

Statements of present condition are allowed into evidence "in view of the

patient's strong motivation to be truthful." Fed. R. Evid. 803(4), Note to

Paragraph (4). "The same guarantee of trustworthiness extends to

statements of past conditions and medical history." Id. As shown by his

medical records, Mr. Hall was telling doctors that he had had cancer in the

past. Plaintiff is now attempting to hold CUNA to a standard higher than

that required by the Rules of Evidence. Plaintiff expects CUNA, and this

Court, to disregard the medical records of numerous doctors. This is not a

reasonable position for Plaintiff to take.

---

[2]Admittedly, some of the doctors did copy information from prior treating
physicians. However, much of the information came from Mr. Hall himself.

Even assuming that CUNA lacked a reasonable basis for denying benefits (which is denied), Plaintiff still may not recover for bad faith unless she shows that CUNA knew or recklessly disregarded its lack of reasonable basis and shows both elements by "clear and convincing evidence."  Plaintiff cannot satisfy this heavy burden.  Neither the doctors who treated Mr. Hall for cancer, nor CUNA recklessly disregarded anything.  A pathology report may (or may not) be the best way to determine the existence of a malignant melanoma.  However, reliance on other medical records does not constitute reckless disregard of the truth.  When a court considers a plaintiff's medical records, it is not recklessly disregarding the truth – and neither was CUNA.

## V.    PLAINTIFF'S ALLEGATIONS OF "SYSTEMIC" BAD FAITH ARE NOT SUPPORTED BY THE EVIDENCE, AND HER EXPERT REPORTS ARE FUNDAMENTALLY FLAWED.

In her Opposition Brief, Plaintiff acknowledges that there were only three (3) home mortgage protection life insurance policies rescinded between 1998 and 2001.  (Opposition Brief, at 23).  (The documents containing those figures are located in the Defendants' Appendix, at Tab "24A" & "24B.")  Despite acknowledging this fact, Plaintiff attempts to support her claim of "systemic bad faith" by relying on her expert's report.  Plaintiff's expert reports are not factual evidence.  It does not matter

whether the experts "will be testifying live at trial." (*See* Opposition Brief, at 23).  There is no evidence that any more than 3 policies were rescinded by CUNA.  CUNA is therefore entitled to summary judgment on the allegations of "systemic" bad faith.

On September 11, 2002, CUNA filed a Motion in Limine and supporting brief, seeking to exclude the proposed expert testimony of Plaintiff's experts.  The proposed expert testimony is conclusory, encompasses legal issues, and usurps the role of both judge and jury.  Additionally, Plaintiff's experts apply a fundamentally flawed concept of "post-claim underwriting."  Plaintiff's counsel then compounds the problem by misquoting his own expert.  In the Opposition Brief, Plaintiff's counsel quotes his expert as concluding, "CUNA was on notice of Mr. Hall's condition and had the opportunity to request and review Mr. Hall's medical records."  (Opposition Brief, at 23 (incorrectly quoting Michelle Doherty's expert report, at p. 3) (underlining added)).  CUNA, of course, was not aware of Mr. Hall's "condition."  The correct quote is:  "CUNA was on notice of Mr. Hall's physician and had the opportunity to request and review Mr. Hall's medical records."  There is, of course, a significant difference between knowing that Mr. Hall was seeing a particular doctor, and knowing that Mr. Hall had cancer.

Setting aside the erroneous quote, Plaintiff's experts apply a flawed concept of post-claim underwriting. An insurer is entitled to rely on the representations of its insured in an application for insurance. Mr. Hall filled-out the Application, indicating that he did not have cancer. CUNA was not required to "check-up" on Mr. Hall by investigating his medical records prior to issuing the Certificate of Insurance. As set forth in CUNA's brief in support of its Motion in Limine to preclude Plaintiff's experts, the definition of post-claim underwriting proffered by Plaintiff's experts is not codified in Pennsylvania or any other state, and is contrary to the definition used in Pennsylvania and elsewhere.

Some states have identified the concept of "post-claim underwriting" as an improper insurance practice. However, post-claim underwriting is understood to be an improper practice only when an insurer, which has some evidence that a person suffers from an ailment, nonetheless issues a policy, and only after receiving a claim on the policy does the insurer require a complete medical history. The insurer then denies the claim based upon the complete medical history. This is distinguished from the situation now before the Court, where the undisputed facts are that Mr. Hall did not disclose, and CUNA was not aware of, <u>any</u> condition affecting his insurability at the time of the Application.

There is no support in any credible insurance treatise, or in the law of any state, for the conclusion that improper post-claim underwriting can occur when the insurer is not aware of any condition affecting insurance prior to the Application. (*See* Defendants' Brief in Support of Their Motion in Limine Regarding Plaintiff's Proposed Expert Testimony, at 9-11).

Moreover, CUNA did not engage in improper post-claim underwriting by investigating Mrs. Hall's claim after it was filed. Under Pennsylvania law, an insurer is entitled to conduct a "more thorough and protracted investigation," when an insured's claim presents "red flags." <u>O'Donnell ex rel. Mitro v. Allstate Ins. Co.</u>, 734 A.2d 901, 907 (Pa. Super. 1999). In the instant matter, as indicated by the Certificate of Death itself, there were at least 2 red flags: (1) Mr. Hall died of a melanoma, which he had apparently suffered from for the past 2 to 3 years; and (2) Mr. Hall died of a metastatic melanoma, meaning that there had been a prior primary site of cancer. (*See* Defendants' Appendix, at Tab "4," Certificate of Death; Appendix, at Tab "5," Dep. of Brenda Larson at 23).

## VI.    PLAINTIFF HAS NO BASIS FOR ASSERTING A FRAUD CLAIM.

In her Amended Complaint, Plaintiff's allegations with respect to fraud consist of a boilerplate assertion that Defendants are liable for "fraud, deceit." (Amended Complaint, ¶28). Plaintiff has not alleged, nor is there

any evidence to support, a fraud claim.  Essentially, Plaintiff is claiming that

the Certificate of Insurance itself is the fraudulent misrepresentation.

However, an unfulfilled promise to do something in the future is not fraud.

Huddleston v. Infertility Ctr. of America, Inc., 700 A.2d 453, 461 (Pa. Super.

1997); Krause v. Great Lakes Holdings, Inc., 563 A.2d 1182, 1187 (Pa.

Super. 1989).  Accordingly, Plaintiff must show that at the time the

Certificate of Insurance was issued, CUNA knew or recklessly disregarded

the fact that the Certificate of Insurance would not be honored.

There is no evidence to show that, at the time the Certificate of

Insurance was issued, CUNA knew it would not honor the policy.  At the

time the Certificate was issued, CUNA did not have Mr. Hall's medical

records.  It therefore could not have known that benefits would be denied.

If CUNA had known that Mr. Hall had cancer, why would it have issued the

Certificate?  When Mrs. Hall's claim was denied, all of the premiums were

returned to her.  Hence, CUNA did not profit by any alleged

misrepresentation.  If CUNA had known Mr. Hall had cancer, it would just

not have accepted his Application.

Similar to her claim of "systemic" bad faith, Plaintiff relies on expert

testimony and allegations of "post-claim underwriting" to support her claim

of fraud.  (Opposition Brief, at 21).  As stated above, Plaintiff's proposed

expert testimony and her allegations of "post-claim underwriting" are flawed, and they are currently the subject of a Motion in Limine. However, even assuming *arguendo* that Plaintiff's allegations of post-claim underwriting were accepted, they still would not support a claim of fraud. Essentially, Plaintiff alleges that CUNA engaged in post-claim underwriting by failing to investigate Mr. Hall's medical records prior to issuing a Certificate of Insurance (and investigating those medical records only after a claim was made). These allegations do not constitute fraud. CUNA did not knowingly or recklessly disregard evidence of Mr. Hall's cancer. It simply did not investigate whether Mr. Hall had cancer. Hence, at the time of issuing the Certificate, CUNA had no idea whether Mr. Hall had cancer, and it could not have acted knowingly or recklessly.

### VII. CUNA IS NOT LIABLE FOR REPORTING MR. HALL TO THE INSURANCE FRAUD SECTION.

Under the Insurance Fraud Prevention Act, insurers are required to "cooperate fully" with the Insurance Fraud Section of the Office of Attorney General. 40 P.S. § 3701-504. In return for this cooperation, insurers are granted immunity, which may only be overcome by a showing of malice. 40 P.S. § 3701-304.

CUNA received a bulletin from the Insurance Fraud Section that stated, "Pennsylvania law explicitly requires insurer reporting of **suspected**

insurance fraud to a law enforcement agency for consideration of criminal investigation and prosecution." (Appendix, at Tab "18," Dep. of Michael Stel at 41; emphasis added). CUNA had in its possession numerous medical records indicating that Mr. Hall had cancer prior to November, 1998, and that Mr. Hall lied about it on his Application. As a result, CUNA reported Mr. Hall to the Insurance Fraud Section.

CUNA's employee, Michael Stel, did what he thought was required by Pennsylvania law. Plaintiff's misplaced reliance on the conjecture and opinions of his expert is not evidence.

## VIII.  DAMAGES FOR EMOTIONAL DISTRESS ARE NOT RECOVERABLE IN THIS ACTION.

Plaintiff admits that her recovery is governed by the "gist of the action" doctrine, as well as the economic loss doctrine. (Opposition Brief, at 27). Plaintiff nonetheless attempts to recover damages for pain and suffering and emotional trauma. There is no legal support for such a recovery.

Plaintiff relies on Birth Center v. St. Paul Companies, Inc., 787 A.2d 376 (Pa. 2001), in attempting to recover emotional distress damages. The Birth Center case does not support this proposition. In Birth Center, the Pennsylvania Supreme Court held that the bad faith statute did not support a claim for compensatory damages, but that, "[t]he statute does not prohibit

the award of compensatory damages." Id. at 386. The Birth Center was a business. As a result of St. Paul's bad faith refusal to settle a lawsuit, the Birth Center suffered damage to "its business, reputation and credit" to the extent of $700,000. Id. at 381. The Supreme Court permitted recovery of this amount as a form of consequential damages naturally flowing from St. Paul's breach of the insurance contract. Id. at 388-89. The Supreme Court did not permit the recovery of damages for emotional distress.

Plaintiff also cites Leo v. State Farm Mut. Auto. Ins. Co., 908 F. Supp. 254 (E.D. Pa. 1995), for the proposition that a bad faith denial of insurance benefits might support emotional distress damages if "serious emotional disturbance" were the likely outcome of an insured who was unable "to secure the basic necessities of life." Id. at 257. To begin with, the Leo court's statement in this regard was dicta. The court granted State Farm's motion to dismiss, and struck the plaintiff's claim for emotional distress damages. Id. at 257-58. Moreover, in dismissing the plaintiff's claim for emotional distress damages, the court noted that, "[t]his court is not aware of any instance in which the courts of Pennsylvania have upheld a claim made under this theory." Id. at 257.

Even assuming, arguendo, that "serious emotional disturbance" might potentially support the recovery of damages when a plaintiff is unable to

secure the basic necessities of life after the denial of insurance benefits, Mrs. Hall was not impoverished as a result of CUNA's actions, and she did not suffer "serious emotional disturbance."  When Mrs. Hall sold the home in May, 2000, she received approximately $14,000 -- after paying off the mortgage.  (Defendants' *Supplemental Appendix,* at *Tab "A"*; Deposition of Nancy Hall at 89-90).  She received an additional $24,000 to $26,000 from Mr. Hall's 401k plan.  (Nancy Hall Dep. at 97).  She was not destitute. As of March, 2002, Mrs. Hall still had $26,000 left in her checking account "[f]rom everything that I started with in '99."  (Nancy Hall Dep. at 123).

Mrs. Hall did not move into John Millhouse's home, and begin working as a maid because it was financially necessary.  She moved in "[b]ecause it was hard to stay in the house where my husband died." (Nancy Hall Dep. at 100).  While Mrs. Hall may have initially worked for John Millhouse as a live-in maid, they have become business partners (Nancy Hall Dep. at 120-21), and they are currently romantically involved. (Nancy Hall Dep. at 129).  Mrs. Hall is neither impoverished, nor suffering from "serious emotional disturbance."  Recovery of damages for pain and suffering and emotional trauma are therefore not warranted.

## IX.    CONCLUSION

For the foregoing reasons, the Court should grant CUNA's Motion for
Partial Summary Judgment, and enter judgment in favor of CUNA and
against Plaintiff on the claims of bad faith, fraud, and negligence, pain and
suffering and emotional trauma, and of "systemic" bad faith, and dismiss
"CUNA Mutual Group" as a Defendant in this lawsuit.

McNEES WALLACE & NURICK LLC


By _____
    Michael R. Kelley
    Charles T. Young
    100 Pine Street
    P.O. Box 1166
    Harrisburg, PA 17108-1166
    Phone:  (717) 237-5322
    Fax:  (717) 237-5300

Dated:  October 4, 2002          Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Nancy Hall, individually and as the Representative and Administratrix of the Estate of Tommy Hall, deceased, her husband,** | : | **CIVIL ACTION - LAW** |
| | : | |
| | : | |
| | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **1:01-CV-1265** |
| | : | |
| **CUNA Mutual Group, CUNA Mutual Insurance Society,** | : | |
| | : | |
| **Defendants** | : | **(Judge Christopher C. Conner)** |

## RULE 7.8(b) CERTIFICATE

In accordance with M.D. Pa. LR 7.8(b)(2), I hereby certify that the foregoing Brief, including footnotes, consists of 4,095 words as calculated by the word-count feature of Microsoft Word.

McNEES WALLACE & NURICK LLC

By _____

Michael R. Kelley
Charles T. Young, Jr.
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 237-5322

Attorneys for Defendants

Dated:      October 4, 2002

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this date the foregoing

document was served by U.S. first-class mail, postage prepaid, upon the

following:

       Stephen R. Pedersen, Esquire
       214 Senate Avenue, Suite 602
       Camp Hill, PA  17011

       Catherine Mahady-Smith, Esquire
       3115-A N. Front Street
       Harrisburg, PA  17110

Charles T. Young, Jr.

Attorney for Defendants

Dated:     October 4, 2002