IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Nancy Hall, individually and as the Representative and Administratrix of the Estate of Tommy Hall, deceased, her husband,<br>     Plaintiff<br><br>    v.<br><br>CUNA Mutual Group, CUNA Mutual Insurance Society,<br>     Defendants | : CIVIL ACTION - LAW<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: 1:01-CV-1265<br>:<br>:<br>:<br>: (Judge Christopher Conner) |

FILED
HARRISBURG, PA
OCT 0 7 2002
MARY E. D'ANDREA, Cl
Per _____ Deputy Clerk

## DEFENDANTS' BRIEF
## IN OPPOSITION TO PLAINTIFF'S
## CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. PROCEDURAL HISTORY

On September 20, 2002, Plaintiff filed a Cross Motion for Partial Summary Judgment and brief in support.[1] This brief is submitted in

---

[1] The brief is entitled "Plaintiff's Brief in Response to Defendants' Motion for Partial Summary Judgment and Plaintiff's Brief in Support of Its Motion for Partial Summary Judgment on the Contract Claim."

opposition to Plaintiff's Cross Motion for Partial Summary Judgment. The parties have already submitted briefs regarding CUNA's Motion for Partial Summary Judgment as to the claims of bad faith, fraud, and negligence. This brief is limited solely to addressing Plaintiff's Cross Motion for Partial Summary Judgment on the breach of contract claim.

## II. STATEMENT OF FACTS

In November, 1998, the Halls refinanced the mortgage on their home. As part of the refinancing, the Halls applied for a credit life insurance policy, on Mr. Hall's life only, through their lender Patriot Federal Credit Union. The purpose of the policy was to insure that the remaining balance of the mortgage, which was $56,000 at the time of the application, would be paid if Mr. Hall died.

On November 18, 1998, Mr. Hall submitted to CUNA a "Members Home Mortgage Protection II Application" in which he affirmatively represented that he had <u>never</u> been "treated for or diagnosed by a member of the medical profession as having" had <u>cancer</u> (the "Application") (Defendants' Appendix, at "Tab 1"). Mr. Hall signed the Application in the section containing the following pertinent language: "These answers are true and complete to the

2

best of my knowledge and belief...." "Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud...."

Because Mr. Hall answered "No" to all of the health questions on the Application, on January 1, 1999, CUNA, relying on the accuracy of the health declaration, issued a Certificate of Insurance to Mr. Hall (the "Policy"). (*See* Defendants' Appendix, at Tab "2").

Under the Policy's "GENERAL PROVISIONS – LIFE AND DISABILITY INSURANCE," the Policy identified a 2-year contestability period, which stated, in pertinent part, "If the date of birth, amount of loan, amount of insurance or any other relevant data is found to be misstated, such that insurance would not have been issued had the true date of birth or other data been stated and [CUNA] discovers this during the contestable period, Our liability will be limited to a return of premiums paid by the Debtor." (Defendants' Appendix, at Tab "2," at D0020).

On November 4, 1999 (less than 1 year after the Policy's Effective Date), Mr. Hall died as a result of a metastatic melanoma. A metastatic melanoma is a malignant mole or tumor, which manifests

itself at a **_secondary site_** – the malignant cells having previously spread by way of the lymphatic system, bloodstream, or some other avenue. Tabor's Cyclopedic Medical Dictionary 1181 & 1202 (18th ed. 1997). Following Mr. Hall's death, Mrs. Hall submitted a claim for benefits, along with a copy of Mr. Hall's Certificate of Death. (*See* Defendants' Appendix, at Tabs "3" & "4").

The claim submitted by Mrs. Hall was reviewed by Brenda Larson, an employee of CUNA who handled the claim. (*See* Defendants' Appendix, at Tab "5," Dep. of Larson). Upon receiving the file, Larson reviewed the claim form and Certificate of Death (Larson Dep. at 22-24). The Certificate of Death indicated that Mr. Hall had died of a metastatic melanoma, and further, that he had suffered from a metastatic melanoma for 2 to 3 years. (Larson Dep. at 23). Based on this information, Larson determined that an investigation was warranted. (Larson Dep. at 27 & 29). CUNA subsequently requested Mr. Hall's medical records from treating physicians Drs. Guthrie/Hurley, Charlesworth, Chicklo, Cashdollar, and Enders (See Larson Dep. at 30-60 & Tab "5A"). CUNA received records from all of the above physicians except from the office of Drs. Guthrie and Hurley (who were partners). CUNA was advised that

4

their records were not available because they were "lost or misplaced." (*See* note of phone contact, Appendix, at Tab "28"). The medical records collected, which also included records from Dr. William Sharfman (an oncologist at Johns Hopkins) and Dr. David Weinreich, showed the following pertinent information with regard to Mr. Hall's medical history:

### A. Summary of Tommy Hall's Medical Records

1) 4/13/93 Pathological Report, Chambersburg Hospital: excision of "dysplastic nevus, skin (back)" (*See* Defendants' Appendix, at Tab "6A");

2) 4/30/98 New Patient Intake form, Dr. Charlesworth: history related by patient of **"cancerous mole - removed 96"** and two back surgeries in 1989 and 1993[2] (*See* Defendants' Appendix, at Tab "6B") (emphasis added);

3) 4/30/98 Office Note of Dr. Charlesworth: patient related history of **"? melanoma removed back 1996"** (*See* Defendants' Appendix, at Tab "6C") (emphasis added);

4) 1/15/99 Intake Note of Dr. Chicklo: surgical history related Two spinal surgeries in 1989 and 1993, **"mole – ca on back exc. (1993)"** (*See* Defendants' Appendix, at Tab "6D") (emphasis added);

5) 1/22/99 Patient History of Dr. Chicklo: **"spinal surgery and he had a malignant mole excised in 1993 on his back."** (*See* Defendants' Appendix, at Tab "6E") (emphasis added);

6) 2/17/99 New Patient Information Record/Dr. Enders: Patient Medical History: **"malignant mole on back 93"** (*See* Defendants' Appendix, at Tab "6F") (emphasis added);

---

[2] This record was first received by CUNA during discovery in this action.

5

7) 2/17/99 Letter from Dr. Cashdollar to Dr. Chicklo: "I had the pleasure of seeing Tommy Hall in medical oncology consultation on Wednesday, 2-17-99. As you are well aware, **Mr. Hall demonstrated a left in scapular dermal lesion in 1993. Pathology revealed a malignant melanoma...."** "PMH is most notable for the malignant melanoma. Surgical resection in 1993. The patient also reports two lumbar spinal procedures in 1989 and 1993 for herniated disk disease" (*See* Defendants' Appendix, at Tab "6G") (emphasis added);

8) 2/18/99 Chambersburg Hospital/Dr. Cashdollar note: **"History of Melanoma"** (*See* Defendants' Appendix, at Tab "6H") (emphasis added);

9) 2/23/99 Dr. Enders note: **"subj: 43 yo white male with melanoma in 1993"** (*See* Defendants' Appendix, at Tab "6I") (emphasis added);

10) 3/15/99 Colonoscopy Report/Dr. Enders: "This is a 43 year-old white male who had a **melena [sic] removed in 1993..."** (*See* Defendants' Appendix, at Tab "6J") (emphasis added);

11) 7/15/99 New Patient Clinic Visit Report/Dr. Sharfman: "This is a 44-year-old white male who was in his usual state of health until 1996 when he had a number of small moles removed on his left neck that was being irritated by his shirt. **In 1993, a mole developed on his left shoulder blade. It developed a bright red rim around it. It was excised. Pathology showed a malignant melanoma"** (*See* Defendants' Appendix, at Tab "6K") (emphasis added);

12) 7/26/99 Chambersburg Hospital Radiologists Report: **"History: Melanoma"** (*See* Defendants' Appendix, at Tab "6L") (emphasis added);

13) 9/30/99 Inpatient Record/David Weinreich, M.D.: History of Present Illness: **"The patient was first diagnosed with melanoma in 1993** and underwent a wide local excision of a shoulder lesion. It subsequently recurred in his neck, which was excised in January of 1999" (*See* Defendants' Appendix, at Tab "6M") (emphasis added).

6

## B. The Testimony of Mr. Hall's Doctors

A summary of the medical records is listed above. As can be plainly seen, the medical records contain repeated references to Mr. Hall's pre-existing cancer. Further, Defendants' Brief in Support of Its Motion for Partial Summary Judgment provides a detailed description of the doctors' testimony at their depositions. This Brief summarizes only those aspects of the depositions of Dr. Charlesworth and Dr. Chicklo, which are directly relevant to the breach of contract claim.

### 1. Dr. Charlesworth

Doctor Charlesworth's records contain a new patient intake form from April, 1998 (7 months before Mr. Hall executed the CUNA Application). (*See* Defendants' Appendix, at "7A"). An intake form was sometimes mailed to the patient and sometimes filled-out in Dr. Charlesworth's waiting room. (Defendants' Appendix, at Tab "7," Dep. of Dr. Charlesworth at 18-19). In this case, the original intake form did not contain creases from mailing, so Dr. Charlesworth believed that it was most likely filled-out in the waiting room. (Charlesworth Dep. at 56).

The intake form had a section entitled, "Medical Problems." During Mr. Hall's visit, the following information was provided:

7

| Medical Problems | Date |
|---|---|

Hospitalizations/Surgery

    1. Cancerous mole – removed    96    Dr. Guthrie.

The notation regarding the removal of a cancerous mole was <u>not</u> made by Dr. Charlesworth. (Charlesworth Dep. at 18-20), nor has his office identified anyone on the staff as the scrivener of this information. Moreover, Dr. Charlesworth specifically recalls a discussion between Mr. Hall and his wife regarding whether a cancerous mole had been removed from Mr. Hall, and if so, what type. (Charlesworth Dep. at 26-27). Finally, CUNA's handwriting expert will testify that the notation regarding cancer was written by Mr. Hall himself. (Defendants' Appendix, at Tab "23.")

On December 11, 1998 (3 weeks after Mr. Hall filled-out the Application for CUNA), Mr. Hall returned to Dr. Charlesworth, complaining of a lump on the inside of his throat. (Charlesworth Dep. at 36-37 & Defendants' Appendix, at Tab "7B," Exhibit Charlesworth 2). The lump later turned out to be cancerous, specifically the metastatic melanoma, which caused Mr. Hall's death.

### 2. Dr. Chicklo

Dr. Chicklo saw Mr. Hall for the first time on January 15, 1999 (about 2 months after Mr. Hall had filled out the CUNA Application). (*See* Defendants' Appendix, at Tab "8," Dep. of Chicklo, at 10-11). Dr. Chicklo's intake sheet is Exhibit Charlesworth 3. Under a section entitled "Surgery," (*See* Appendix, at Tab "8A."), the intake form states:

> mole <u>ca.</u>   Exc.   1993 [circled]    <u>Guthrie</u>
>     on back

(underlining in original). With the exception of the phrase "on back," the above remarks were written by Dr. Chicklo's secretary, Paula N. Statler. (*See* Chicklo Dep. at 12-13; Defendants' Appendix, at Tab "9," Dep. of Statler, at 6-7). The remarks indicate that Mr. Hall had a cancerous mole excised in 1993. (Chicklo Dep. at 12-13; Statler Dep. at 7-8). Dr. Chicklo circled the year 1993 and indicated that the location of the mole was on Mr. Hall's back. (Chicklo Dep. at 12-13; Statler Dep. at 7-8).

At the time the intake sheet was filled-out, Dr. Chicklo's office did <u>not</u> have Mr. Hall's medical records. (Statler Dep. at 7). Accordingly, the information would have come directly from the

patient. (Id.) Mrs. Hall has testified that she never accompanied her husband on any of his visits to Dr. Chicklo's office. (*See* Defendants' Appendix, at Tab "10," Dep. of Nancy Hall at 16).

During Brenda Larson's investigation, she obtained the above-referenced medical records.[3] She also obtained a "pathological report" dated 4/13/93. (Larson Dep. at 32-34 & 44). That pathology report contains the microscopic analysis of a mole removed from Mr. Hall. (Defendants' Appendix, at Tab "15"). It shows that the mole was regarded as a "dysplastic nevus." A dysplastic nevus is not cancer. It is "a dermatologic condition in which there are cells that have abnormal pigment." (Defendants' Appendix, at Tab "16," Dep. of Thomas J. Ansfield, M.D. at 9). While a dysplastic nevus is benign, it is a risk factor for developing melanoma, a form of skin cancer. (Ansfield Dep. at 10-11). The pathology report itself recommends follow-up. (Defendants' Appendix, at Tab "15.")

---

[3] Except the intake form at Dr. Charlesworth's office. Despite CUNA's request during its investigation of the claim, Charlesworth's office (we assume inadvertently) failed to produce this record. It was obtained during discovery in this litigation.

## C. Denial of Plaintiff's Claim

After Larson collected Mr. Hall's medical records, she had them reviewed by Dr. Thomas Ansfield. (Larson Dep. at 49). Dr. Ansfield is a practicing physician, a specialist in internal medicine, and a consulting medical director with CUNA. (Ansfield Dep. at 4-5). Dr. Ansfield and Larson discussed the information they had collected. (Ansfield at 32-33, 36). Both reached the same conclusion. Mr. Hall had misrepresented his true medical background at the time of his Application. Dr. Ansfield and Larson further agreed that, if the history of cancer had been disclosed in the Application, CUNA would not have issued the Certificate of Insurance. Based on the records, and the analysis of Dr. Ansfield and Larson, CUNA denied Plaintiff's claim, rescinded the Policy, and returned the premiums to Plaintiff. By letter dated February 10, 2000, CUNA notified Mrs. Hall of its decision. (Defendants' Appendix, at Tab "17.")

## III. STATEMENT OF QUESTIONS INVOLVED

Whether Plaintiff is entitled to summary judgment on the breach of contract claim when her motion is untimely, and Mr. Hall's medical records indicate that he had been diagnosed with cancer prior to filling-out the CUNA Application?

Suggested Answer: No.

## IV. LEGAL ARGUMENT

### A. PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF ARE UNTIMELY AND SHOULD BE DISREGARDED.

Under the Court's Order of April 19, 2002, dispositive motions and supporting briefs were due "no later than August 30, 2002." (Order, 4/19/02, Rambo, J., at p.1, ¶5). Plaintiff did not file any dispositive motions or supporting briefs by August 30, 2002. Rather, Plaintiff filed her Cross Motion for Partial Summary Judgment and supporting brief on September 20, 2002 – 21 days <u>after</u> the deadline had passed. This is a violation of the Court's Scheduling Order. Moreover, Plaintiff has proffered no excuse for violating the Court's Order. Accordingly, Plaintiff's Cross Motion for Partial Summary Judgment and supporting brief should be disregarded.

### B. CUNA DID NOT BREACH THE INSURANCE POLICY ISSUED TO PLAINTIFF BY RELYING ON THE MEDICAL RECORDS OF MR. HALL.

Plaintiff claims that CUNA breached the credit life insurance policy issued to Mr. Hall by denying Mrs. Hall benefits following the death of Mr. Hall from cancer. In denying Mrs. Hall's claim, CUNA relied on a number of Mr. Hall's medical records indicating that he had had a cancerous mole removed in 1993 or 1996, and failed to

disclose this fact on his Application. (*See* Defendants' Appendix, at Tabs "6C," "6D," "6E," "6F," "6G," "6H," "6I," "6J," "6K," "6L," and "6M.") During discovery, CUNA located additional medical records showing a pre-existing cancer. (*See* Defendants' Appendix, at Tab "6B.")

While the above medical records reference Mr. Hall's pre-existing cancer, Plaintiff claims that CUNA breached the insurance policy by denying benefits. Plaintiff maintains that Mr. Hall could not have been diagnosed with cancer prior to November, 1998, because the 1993 pathology report shows that the mole removed from Mr. Hall was non-cancerous. (Plaintiff's Brief, at 30).

Plaintiff's reliance on the 1993 pathology report is misplaced. Mr. Hall could have found out about his cancer at any point between 1993 and November, 1998. The pathology report itself states that follow-up is recommended. (*See* Defendants' Appendix, at Tab "15.") It is therefore logical that Mr. Hall did in fact follow-up, and at that time, learned of his cancer. While the pathology report of the 1993 mole did not reveal cancer, the evidence shows that Mr. Hall knew he suffered from cancer prior to filling-out the Application.

13

Dr. Charlesworth specifically recalls a conversation between Mr. Hall and his wife regarding a prior diagnosis of cancer. (Charlesworth Dep. at 26-27). This conversation occurred before Mr. Hall executed the Application. Moreover, CUNA's handwriting expert will testify that the notation in Dr. Charlesworth's records, "Cancerous mole – removed 96," was actually written by Mr. Hall himself. (See Defendants' Appendix, at Tab "23.") The notation, like the conversation between Mr. Hall and his wife, occurred just 7 months before the Application was executed. Furthermore, the notation references 1996, and shows that a diagnosis of cancer could have occurred in 1993 or 1996.

"In considering a motion for summary judgment, a court does not resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most favorable to the party opposing the motion." Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3rd Cir. 1995). "[I]nferences should be drawn in the light most favorable to the non-moving party." Carter v. Exxon Co. USA, 177 F.3d 197, 202 (3rd Cir. 1999). In this case, Mr. Hall routinely and repeatedly advised his doctors that he had cancer in the past. It is logical to infer that Mr. Hall had previously been diagnosed

with cancer. Notwithstanding the 1993 pathology report, the jury is entitled to infer that Mr. Hall had, in fact, been diagnosed with cancer prior to November, 1998. In deciding a summary judgment motion, this inference must be drawn in favor of CUNA, the non-moving party. Accordingly, Plaintiff is not entitled to summary judgment on the breach of contract claim.

Additionally, while Plaintiff would have this Court believe that all of the doctors in question simply copied the information in their records from one erroneous source, this is not true. The remarks in Dr. Chicklo's intake sheet indicate that Mr. Hall had a cancerous mole excised in 1993. (*See* Chicklo Dep. at 12-13; Statler Dep. at 7-8; Defendants' Appendix, at Tab "8A.") At the time Dr. Chicklo's intake sheet was filled out, his office did <u>not</u> have Mr. Hall's medical records. (Statler Dep. at 7). As a result, the information had to have come directly from Mr. Hall. Dr. Chicklo himself circled the year 1993 and indicated that the location of the mole was on Mr. Hall's back. (Chicklo Dep. at 12-13; Statler Dep. at 7-8).

Again, the jury is entitled to infer that Mr. Hall told Dr. Chicklo that he had had cancer in the past. There is no other reasonable explanation for the notation appearing in Dr. Chicklo's records.

Moreover, Mr. Hall did not have medical training. Accordingly, the jury is entitled to believe that a doctor had, at some point prior to November, 1998, told Mr. Hall he suffered from cancer. Plaintiff has no explanation for why references to pre-existing cancer repeatedly appear in Mr. Hall's medical records.

## V. CONCLUSION

For the foregoing reasons, and for those set forth in CUNA's brief in support of its own Motion for Partial Summary Judgment, the Court should deny Plaintiff's Cross Motion for Partial Summary Judgment on the breach of contract claim, and grant summary judgment in favor of CUNA on the claims of bad faith, fraud, and negligence, pain and suffering and emotional trauma, and of "systemic" bad faith, and dismiss "CUNA Mutual Group" as a Defendant in this lawsuit.

McNEES WALLACE & NURICK LLC

By _____
Michael R. Kelley
Charles T. Young, Jr.
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
Phone: (717) 237-5322
Fax: (717) 237-5300

Dated: October 7, 2002      Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Nancy Hall, individually and as the Representative and Administratrix of the Estate of Tommy Hall, deceased, her husband, | : | CIVIL ACTION - LAW |
| **Plaintiff** | : | |
| v. | : | 1:01-CV-1265 |
| CUNA Mutual Group, CUNA Mutual Insurance Society, | : | |
| **Defendants** | : | (Judge Christopher C. Conner) |

## RULE 7.8(b) CERTIFICATE

In accordance with M.D. Pa. LR 7.8(b)(2), I hereby certify that the foregoing Brief, including footnotes, consists of 3,066 words as calculated by the word-count feature of Microsoft Word.

McNEES WALLACE & NURICK LLC

By _____
Michael R. Kelley
Charles T. Young, Jr.
100 Pine Street
P.O. Box 1166
Harrisburg, PA  17108-1166
(717) 237-5322

Attorneys for Defendants

Dated:    October 7, 2002

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date the foregoing document was served by U.S. first-class mail, postage prepaid, upon the following:

Stephen R. Pedersen, Esquire
214 Senate Avenue, Suite 602
Camp Hill, PA  17011

Catherine Mahady-Smith, Esquire
3115-A N. Front Street
Harrisburg, PA  17110

_____
Charles T. Young, Jr.

Attorney for Defendants

Dated:     October 7, 2002