ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NANCY HALL, individually and as the : CIVIL ACTION - LAW
Representative and Administratrix of :
the Estate of TOMMY HALL, deceased, :
her husband, :
            Plaintiff, :
             : 1:01-CV-1265
    vs. :
             :
CUNA MUTUAL GROUP; CUNA :
MUTUAL INSURANCE SOCIETY, :
             : JUDGE CHRISTOPHER CONNER
            Defendants. :

FILED
HARRISBURG, PA
OCT 24 2002
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE CONTRACT CLAIM

     **PLAINTIFF**, by and through undersigned counsel, hereby submits the following Brief in Reply to its Cross-Motion for Partial Summary Judgment on the Contract Claim. Defendant CUNA Mutual Group and CUNA Mutual Insurance Society (collectively "CUNA") contend that the motion is untimely and that there are factual disputes as to whether CUNA breached the insurance contract with Mr. Hall following his death. Each of these issues will be addressed below.

I.    PLAINTIFF'S MOTION AND RESPONSE TO DEFENDANT'S MOTION WERE BOTH TIMELY FILED.

     CUNA argues that the Court should disregard Plaintiff's Response and Cross Motion for Partial Summary Judgment, arguing that they are both untimely. To reach this conclusion,

1

Defendants miscalculate the time periods allowed by Rules 6 and 56 of the Federal Rules of Civil Procedure.

Defendants acknowledge that they filed their Motion for Partial Summary Judgment and Supporting Brief on August 30, 2002, and mailed a copy to undersigned counsel for the Plaintiff. Rule 6(e) provides that when service is accomplished by mail, three days are allowed and added to the prescribed time to respond. In order to calculate the three day period, and to consider whether weekends and holidays are included in the mailing days, Rule 6(a) states that when the time period to be calculated is less than 11 days, "intermediate Saturdays, Sundays and legal holidays **shall be excluded** from the computation." Fed. R. Civ. P. 6(a)(emphasis added). Accordingly, the computation of the three mailing days does not include weekends and holidays when the mail is not being circulated and delivered.

Because CUNA's filing was on Friday, August 30, 2002 and the mailing occurred sometime after the filing, the intervening Saturday August 31, Sunday September 1 and Monday, September 2 (Labor Day) do not count in the time computation. According to the mailing rule, Plaintiff's time to respond did not begin to run until Thursday, September 5, 2002 (three non-weekend and non-holiday days after the filing). Fed. R. Civ. P. 6. Plaintiff's Response and Brief were filed, as acknowledged by CUNA, on September 20, 2002, exactly fifteen days after the mailing period expired. The Response and Brief were thus timely filed.

Defendant asks this Court to disregard Rule 6 and to count weekends and legal holidays wherein the mail did not circulate and was not delivered. Defendant's argument contradicts both the plain language of the rule and logic. The rule gives extra time to a respondent where the moving party has chosen service by mail. Rule 6 recognizes that the moving party is in control of

2

the timing of filing and service and therefore does not allow a moving party to shorten a respondent's response time by leaving a motion in a mailbox over a weekend and legal holiday, as CUNA has attempted to do in this case. If CUNA had intended to require a shorter response time, it could have hand-delivered the document to counsel's office. CUNA cannot have its cake and eat it too. It choose service by mail, but now seeks to disregard the computation of time contained within the very rule that allows service by mail.

CUNA next argues that Plaintiff's Cross-Motion, filed within 20 days of its own Motion, is somehow untimely. CUNA filed their original Motion on August 30, 2002. Federal Rule of Civil Procedure 56(a) states, under the heading **Summary Judgment**, as follows:

> "A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any after the expiration of 20 days from the commencement of the action **or after service of a motion for summary judgment** by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a).

Plaintiff, after having received and read CUNA's Motion for Partial Summary Judgment, realized that CUNA had not sought Summary Judgment with respect to the contract itself because no tenable argument could be made that monies were not owed on the contract. CUNA's position now is that Plaintiff's should have read their minds, known in the advance of filing that CUNA would not address the contract issue in their Motion and Plaintiffs should have filed a preemptory motion simultaneously with CUNA's motion itself. This position defies logic. A Cross-Motion for Partial Summary Judgment, following CUNA's filing, was both warranted and timely.

3

Judge Rambo's order set and established deadlines for Dispositive Motions, but did not rule out Cross-Motions for Summary Judgment, as specifically allowed and contemplated by Rule 56, quoted above. Fed. R. Civ. P. 56.

However, if the Court calculates the time frames differently from Plaintiff's counsel as described above, Plaintiff requests that the court exercise its discretion over these types of dispositive motions, and fully considers all the briefs, motions and supporting documents. Rule 56(e) contains the specific language that even if the respondent wholly fails to respond to a Motion for Summary Judgment (which has not occurred here), summary judgment may only be granted "if appropriate." For all of the reasons set forth herein and in Plaintiff's original response and cross-motion, CUNA's motion should be denied. Furthermore, there is no genuine dispute that CUNA breached its life insurance contract with Mr. Hall, as will be further discussed below.

**II. CUNA Breached Their Insurance Contract with the Halls**

On November 18, 1998, Mr. Hall signed CUNA's "Members Home Mortgage Protection II Application," in which the following catch-all question was posed on a one-page application:

> 1. Have you ever been **treated for or diagnosed by a member of the medical profession** as having any of the following (please check the box and circle condition(s) that apply): diabetes; high blood pressure; chest pains; heart, blood, blood vessel, lung or bleeding disorders; **CANCER**; epilepsy; stroke; pneumonia; arthritis; brain, mental, nervous, back, neck, joint or muscular disorders; stomach, intestines, liver, pancreas, or kidney disorders; pseorosis, drug or alcohol abuse; acquired immune deficiency syndrome or AIDS-related complex; or tested positive for antibodies to the AIDS virus? (emphasis added for purposes of this brief)

In response to the above question, Mr. Hall appropriately checked the box marked "NO." It is admitted that he made no mention of a history of cancer, because he had no history of cancer. Mr. Hall's deposition was taken prior to him passing away and he specifically stated that he had

4

no prior knowledge of the cancer until after the application. <u>See</u>, Exhibits 3 and 4. Mrs. Hall was deposed and she indicated that Mr. Hall had no prior knowledge of cancer in advance of the application. <u>See</u>, Mrs. Hall's deposition, Exhibit 2. Dr. James Hurley, the doctor who removed the mole, was deposed and indicated that, at the time the mole was removed in 1993, there was no cancer and that Mr. Hall was in good health and that the removal of the mole had been successful. <u>See</u>, Dr. Hurley's deposition, Exhibit 5. CUNA has had, since shortly after the initial claim was made, a copy of a pathology report from the 1993 mole removal which specifically found, "displastic neuvus". CUNA knew this to be a non-cancerous finding. <u>See</u>, Dr. Ansfield's deposition, Exhibit 13, in which Dr. Ansfield specifically states that the 1993 pathology report was a non-cancerous finding and CUNA Mutual had no other pathology report at the time of their decision which related to the 1993 mole removal. <u>See also</u>, Brenda Larson's deposition, Exhibit 14, the CUNA Mutual Claims Examiner who admits that a displastic neuvus finding on a pathology report is a non-cancerous finding. Furthermore, in CUNA's Answers to Requests for Admissions, CUNA Mutual admitted that, at the time of CUNA Mutual's decision, CUNA Mutual was in possession of the 1993 pathological report from Chambersburg Hospital. <u>See</u>, Exhibit 15.

      CUNA now contends that because there are 10 post-application medical records with reference to the cancer occurring prior to November, 1998, they do not owe money on the insurance contract. Their contention is misleading. All but two of these records were created after the application was made and after a link had been made between the post-application lump on Mr. Hall's neck and an earlier (1993) mole which had been removed. The 1993 mole was <u>never</u>, prior to the application, diagnosed as cancerous.

The insurance contract asked the question whether Mr. Hall had been "treated or diagnosed" with cancer. No diagnosis had been made prior to the application. CUNA has not and cannot present testimony, through depositions or otherwise of a diagnosis and treatment of cancer prior to the application because it does not exist. CUNA's only effort is to confuse both the Court and the jury with post-application documents which do reference a developing, but undiagnosed cancer prior to the application.

The treating doctors have been deposed by CUNA and CUNA knows that references to the cancer prior to the application have been explained in the depositions as either entries copying incorrect records or as entries made after conclusions were reached, post-application.

At the time of CUNA Mutual's decision to deny benefits, they possessed a 1993 pathology report indicating no cancer and, despite their authorization to speak with doctors concerning Mr. Hall's care, chose not to speak with Dr. Hurley, the treating doctor who removed the mole (See, deposition of Brenda Larson, the CUNA Mutual agent, Exhibit 14) and chose not to speak with Dr. Charlesworth, Dr. Cashdollar, Dr. Enders, Dr. Chicklo, Dr. Ramirez and Dr. Hoffman. Each of these doctors have been deposed and have testified that Mr. Hall had not been treated or diagnosed with cancer prior to the application. Despite receiving this information from those doctors during the course of the litigation, CUNA Mutual continues, throughout the discovery process, to refuse to pay the money from the contract. Dr. Charlesworth's deposition is attached as Exhibit 16, Dr. Cashdollar's deposition is Exhibit 17, Dr. Enders' deposition is Exhibit 18, Dr. Chicklo's deposition is Exhibit 19, Dr. Ramirez's deposition is Exhibit 20, and Dr. Hoffman's deposition is Exhibit 21 to the original Motion.

After the complaint was filed, CUNA Mutual received medical records and work release

from Dr. Hurley showing no cancerous findings in 1993. See, Exhibit 5. They also received the deposition transcripts from the pathologist who reviewed the 1993 slide stating that there were no cancerous findings in 1993. See, Exhibits 20 and 21. CUNA Mutual also sought and obtained voluminous medical records and testimony from doctors who treated Mr. Hall in which they all confirm that Mr. Hall had no diagnosis or treatment for cancer prior to January, 1999. See, depositions of numerous doctors attached as Exhibits 5, 16, 17, 18, 19, 20, and 21.

At the inception of the litigation, Plaintiff's counsel provided Defendants with Dr. David Weinrich's Attending Physician Statement where he indicated that Mr. Hall's first symptoms appeared in January, 1999, more then 2 months after the application was made. See, Exhibit 8. Dr. Weinrich further indicated that the patient had never before had the same or similar condition and that the diagnosis was metastatic melanoma. The doctor indicated that the date of the first visit was in January, 1999 (more then 2 months after the application was made) and the last visit at the time he filled out the Attending Physician Statement was September 30, 1999. Dr. Weinrich further indicated that the melanoma was a rapidly-progressive disorder and that the patient had not been hospitalized up to that point. See, Exhibit 8. During the course of discovery in the instant case, doctors not only indicated that Mr. Hall had not been treated or diagnosed with cancer prior to December, 1998 (prior to the application), but certain doctors indicated that it would be an abuse of their records to imply or infer that Mr. Hall knew he had cancer prior to December, 1998. See, depositions of Dr. Cashdollar (Exhibit 17); Dr. Enders (Exhibit 18); Dr. Chicklo (Exhibit 19); and Dr. Sharfman (Exhibit 23).

Most telling is the deposition of Dr. Ansfield himself, the CUNA Mutual Medical Director who was involved in the decision-making process concerning Mrs. Hall's insurance

claim. Dr. Ansfield's admissions were detailed in Plaintiffs' initial brief. CUNA, in their entire brief, have failed to comment on or address their own medical director's telling admissions when he reviewed the same documents which CUNA now asks the Court to review.

A reiteration of his admission is important.

Dr. Ansfield testified, on page 9 of his deposition which is attached as Exhibit 13, that it is typical or traditional for him to rely on pathology reports in diagnosing cancer and that is, according to Dr. Ansfield, "the standard of care." Furthermore, he was asked, on page 16 of his deposition, the following:

> "Let me ask the question again. Is there anything from the 93 medical records with the surgical procedure of the removal of the mole that indicates that any form of cancer was developing in Mr. Hall?"
>
> ANSWER: "No, there is not."

Dr. Ansfield was asked, on page 19 of his deposition, "Now, are you saying you would have expected Mr. Hall to make his own diagnosis of cancer upon the discovery of a lump in his neck?" Answer: "I don't think that that would be possible for a lay person to make the determination as to what the lump was." He was asked, "You don't have any records, do you, or any information to establish that Mr. Hall knew he had cancer on November 18, 1998, do you?" (Application date was November 18, 1998)

**ANSWER: No, I do not.**

He was asked, "Let me rephrase the question to address the objection. Do you have any information that on November 18, 1998, Mr. Hall knew he had cancer." Answer: "No." (Page 20).

Despite this deposition testimony of CUNA's own Medical Director who had all of the

8

medical records, CUNA now attempts to set aside the admissions of their own Medical Director. CUNA's own Medical Director admitted during his deposition that these references were made after the time of the application and that CUNA Mutual had in their possession the 1993 pathology report which affirmatively indicated that the finding was of a dysplastic neuvos, a non-cancerous finding. The fact that, after the application was made, Mr. Hall subsequently developed a lump on his neck which resulted in surgical intervention, a relation back of the lump to a prior mole and a re-examination of that mole at pathology at the National Institute of Health, has no bearing on the issues presented during this case as to whether or not Mr. Hall had lied on this insurance application.

The only evidence which CUNA has in which they suggest that Mr. Hall lied was a document they did not have at the time of their application. In that document, there is an entry on a patient input form concerning a cancerous mole removed in 1996. There was no evidence in this case that any mole was removed in 1996 and Mr. and Mrs. Hall have both testified in their depositions, at Exhibits 2, 3 and 4, that Mr. Hall did not become aware of a cancerous mole until months after the application was made. However, as Dr. Ansfield testified, the only issue is whether or not the 1993 mole was cancerous. There was no 1996 mole.

Depositions from CUNA's own employee, in addition to those of Dr. Ansfield, testified that the critical document in determining the diagnosis of cancer is the pathology report and that the only pathology report relevant to CUNA's inquiries is the 1993 pathology report and that the 1993 pathology report reveals a dysplastic neuvous, a non-cancerous finding. See, depositions of Dr. Ansfield (Exhibit 15), Brenda Larson (Exhibit 14) and Barbara Lutz (Exhibit 24).

For these reasons, there is no genuine dispute that Mr. Hall had <u>never</u> been "treated" or

"diagnosed" with cancer prior to the application. CUNA has presented <u>no</u> pathology report diagnosing cancer dated prior to the application. CUNA has presented <u>no</u> cancer treatment records dated prior to the application. CUNA has presented <u>no</u> sworn testimony that Mr. Hall knew he had cancer prior to the application.

Plaintiffs have presented: (1) the sworn testimony of Mr. and Mrs. Hall that no pre-application diagnosis or treatment had been made; (2) the admissions of CUNA's own medical director that there is no evidence that Mr. Hall knew he had cancer prior to the application; (3) the 1993 pathology report showing no cancer; (4) the testimony of the doctor who removed the mole, indicating no cancer; (5) the testimony of the two pathologists who examined the mole grossly and microscopically that there was no cancer; (6) the deposition testimony of four subsequent treating doctors <u>all</u> of whom testified that their records either reflect <u>no</u> diagnosis or treatment of cancer prior to the application, or, through their testimony, have corrected their records.

**THEREFORE,** Plaintiffs request that Partial Summary Judgment on the breach of contract claim be granted.

Respectfully submitted,

*[signature]*

Stephen R. Pedersen
214 Senate Avenue, Suite 602
Camp Hill, PA 17011

I. D. No. 72026
Counsel for Plaintiff

10

## CERTIFICATE OF SERVICE

And now, this 24th day of Oct., 2002, I, Carleen S. Jensen, do hereby certify that I have, this date, served a true and correct copy of the within **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CONTRACT CLAIM** upon each of the attorneys of record at the following address(es) by sending same in the United States mail:

Michael R. Kelley, Esq.
Charles T. Young
100 Pine Street
P O Box 1166
Harrisburg, PA 17108-1166

Catherine Mahady-Smith, Esq.
3115-A N. Front Street
Harrisburg, PA 17110

DATE: 10-24-02

Carleen S. Jensen
Assistant to Stephen R. Pedersen, Esquire
214 Senate Avenue, Suite 602
Camp Hill, PA 17011
(717) 763-1170

I. D. No. 72026
Counsel for Plaintiff