2 TO G

50
11/20/0

ORIGINAL

FILED
HARRISBURG, PA

NOV 1 9 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Nancy Hall, individually and as the Representative and Administratrix of the Estate of Tommy Hall, deceased, her husband, **Plaintiff** | : **CIVIL ACTION - LAW**<br>:<br>:<br>:<br>:<br>: |
| **v.** | : **1:01-CV-1265**<br>: |
| Cuna Mutual Group, Cuna Mutual Insurance Society, **Defendants** | :<br>:<br>: **(Judge Christopher Conner)** |

## DEFENDANTS' BRIEF IN OPPOSITION TO
## PLAINTIFF'S MOTION IN LIMINE

### I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

This case arises out of CUNA Mutual Insurance Society's ("CUNA") decision to deny credit life insurance benefits to Plaintiff Nancy Hall following the death of her husband, Tommy B. Hall, due to cancer. The policy issued was intended to cover the remainder of the Halls' home mortgage in the event of Mr. Hall's death. Mrs. Hall alleges that CUNA is

liable for "bad faith" and related causes of action due to the denial of benefits.

CUNA denies that it acted in "bad faith" or that it is liable under any other theory for denying benefits. CUNA asserts that its denial of benefits was proper because, following Mrs. Hall's claim for benefits, it learned that Mr. Hall misrepresented his true medical history on the application for insurance (the "Application") when he insisted that he had never been diagnosed with or treated for cancer.

In support of its claim that Mr. Hall misrepresented his true medical history, CUNA has uncovered <u>twelve</u> different medical records that discuss Mr. Hall's pre-existing malignant melanoma. (Appendix to Defendants' Brief in Support of Its Motion for Partial Summary Judgment ("CUNA App."), Tabs "6B" to "6M.") Ten of the medical records were made after Mr. Hall filled-out CUNA's Application, and refer to cancer that was removed in 1993 or 1996. (CUNA App., Tabs "6D" to "6M.") Two of the records were made <u>before</u> Mr. Hall filled-out CUNA's Application, and they refer to cancer that was removed in 1996. (CUNA App., at Tabs "6B" & "6C.")

Essentially, Plaintiff's argument is that a pathology report is the only means to conclusively diagnose a malignant melanoma; that the only

2

known pathology report concerning Mr. Hall, dated in 1993, did not show cancer; that all of the other medical records "must" have plagiarized some prior erroneous source; and that Mr. Hall therefore did not know he had cancer when he filled-out the CUNA Application. Plaintiff's argument that Mr. Hall did not know he had cancer, however, is undermined by Dr. Charlesworth's intake sheet (filled-out prior to CUNA's Application), which refers to the removal of cancer in 1996. (CUNA App., Tab "6B.") Plaintiff's argument is further undermined by the proposed testimony of CUNA's handwriting expert, John S. Gencavage, who will testify that the handwritten notation on the intake sheet (the "Notation") was written by Mr. Hall himself. (CUNA App., Tab "23.")

## A. The Medical Record at Issue

Mr. Hall's pre-Application medical records are from the files of Dr. Charlesworth.[1] The Notation appears on an intake sheet (the "Intake Sheet") that would have been filled-out by either the patient, or by staff

---

[1] Defendants' counsel has discovered that the deposition transcript of Dr. Charlesworth, which was filed in the Appendix to Defendants' Brief in Support of Its Motion for Partial Summary Judgment, may have missing pages. Accordingly, a complete copy of Dr. Charlesworth's deposition transcript has been included in the Appendix to this Opposition Brief, at **Tab "A."**

based on information from the patient. (CUNA App., at Tab "7," Dep. of Charlesworth, at 17-19).

The Intake Sheet had a section entitled, "Medical Problems." (CUNA App., Tab "6B"). During Mr. Hall's visit, the following information was provided:

| Medical Problems | Date | Hospitalizations/Surgery |
|---|---|---|
| **1.  Cancerous mole – removed** | 96 | Dr. Guthrie. |
| 2.  Back surgery | 12-89 | Dr. Lang ruptured disk  L5-S1 |
| 3.  Back surgery | 1-93 | Dr. Lang bulging disk ?L4-L5 |
| 4.  Diverticulitis | | |

(emphasis added). Under Medical Problem No. 1, the Notation states, "Cancerous mole - removed." The Notation was <u>not</u> made by Dr. Charlesworth, and he could not identify anyone on his staff as the scrivener of the information. (Charlesworth Dep. at 18-19). Dr. Charlesworth also could not identify who made the remarks under Medical Problem Nos. 2 & 3. (Charlesworth Dep. at 20). He did, however, identify Medical Problem No. 4 "Diverticulitis" as being his handwriting. (Charlesworth Dep. at 17).

With respect to the Notation regarding the removal of a cancerous mole, the discussion was as follows:

Q  Is that one of your staff people's writing here?

A  We have several staff people.  That doesn't look like what I'm used to seeing.  So I don't know.  <u>I wonder if it's not either Nancy or Tommy's writing, the patient or his wife's writing.</u>

(Charlesworth Dep. at 18; underlining added).  Dr. Charlesworth specifically recalls a discussion between Mr. Hall and his wife regarding whether a cancerous mole had been removed from Mr. Hall, and if so, what type.  (Charlesworth Dep. at 26-27).

The Intake Sheet was presented to Mrs. Hall at her deposition.  Mrs. Hall denied that any of the writing on the Intake Sheet was her own.  (Supplemental Appendix to Defendant's Brief in Support of Its Motion for Partial Summary Judgment, at Dep. of Nancy Hall, at 23-24).  Mrs. Hall recognized her husband's handwriting at the top of the Intake Sheet (not shown above), where the Intake Sheet asked for Patient's Name, Marital Status, etc....  (Hall Dep. at 24).  Mrs. Hall also recognized her husband's handwriting at Nos. 2 & 3 under Medical Problems (shown above), where the Intake Sheet says, "Back Surgery   12-89," and "Back Surgery  1-93."  (Hall Dep. at 24-25).  While Mrs. Hall acknowledged that the Medical Problems listed at Nos. 2 & 3 were in her husband's handwriting, she denied that the Notation at Medical Problem No. 1 was her husband's handwriting.  (Hall Dep. at 25).  Mrs. Hall claimed to have no knowledge as

to how the Notation regarding a "Cancerous mole -- removed" appeared on the Intake Sheet.  (Hall Dep. at 25).

### B.  The Proposed Testimony of CUNA's Handwriting Expert

CUNA's handwriting expert, John Gencavage, states in his report, that the Notation under Medical Problem No. 1, in Dr. Charlesworth's Intake Sheet, is the handwriting of Mr. Hall.  Gencavage states the following:

> OPINION:
>
> Upon completion of a detailed examination and comparison of the handprinting involved in this case, it is the opinion of this examiner that the writer of the S-1 through S-3 exhibits, Tommy B. Hall II, wrote the questioned handprinting "Cancerous Mole -- Removed" appearing under MEDICAL PROBLEMS on the Q-1 exhibit.
>
> The questioned and standard writings compare favorably in gross characteristics, including degree of skill, style, slant, lateral alignment, writing movement, letter formations, proportions and other characteristics.  All of these factors indicate that Tommy B. Hall II wrote the handprinting in question.

(CUNA App., Tab "23"; underlining added).

### C.  Plaintiff's Motion in Limine

On November 4, 2002, Plaintiff filed a Motion in Limine, seeking to (1) preclude any reference to the Notation, (2) preclude Gencavage from testifying; and (3) sanction CUNA for certain unspecified discovery violations by preventing CUNA from tendering a defense.  Throughout



<u>Plaintiff's entire brief, her counsel does not cite a single case in support of</u>

<u>the relief she seeks.</u>  Plaintiff has neither produced a single case in support

of her proposed sanction, nor identified any conduct that warrants sanction.

CUNA hereby submits this brief in opposition to Plaintiff's Motion in Limine.

## II.  STATEMENT OF QUESTIONS INVOLVED

Whether the Court should preclude any reference to the
Notation in Dr. Charlesworth's Intake Sheet, which Notation
refers to the removal of a malignant melanoma in 1996?

Suggested Answer:  No.

Whether the Court should preclude CUNA's handwriting expert,
John Gencavage, from testifying in this case?

Suggested Answer:  No.

Whether CUNA should be sanctioned for alleged discovery
abuses by an Order preventing it from tendering a defense or
otherwise?

Suggested Answer:  No.

## III.  LEGAL ARGUMENT

**A.    Plaintiff cannot establish that the Notation in Dr.
Charlesworth's Intake Sheet is erroneous.**

Plaintiff argues that the Notation in Dr. Charlesworth's Intake Sheet

should be excluded from evidence because the removal of Mr. Hall's mole

occurred in 1993, and the reference to 1996 is allegedly erroneous.

Plaintiff, however, has failed to establish that a mole was not removed in

1996.  Aside from the Notation, references to the removal of cancer in 1996 appear in at least two other medical records.  Another record from Dr. Charlesworth states "? melanoma removed back 1996." (CUNA App., Tab "6C.")  A similar reference appears in Dr. Sharfman's records:  "This is a 44-year-old white male who was in his usual state of health until 1996 when he had a number of small moles removed on his left neck that was being irritated by his shirt." (CUNA App., Tab "6K"; underlining added.)  The Notation in Dr. Charlesworth's Intake Sheet is confirmed by Dr. Charlesworth's other record, as well as Dr. Sharfman's records.  All of these records refer to the removal of cancer in 1996.

CUNA's handwriting expert will testify that the Notation in Dr. Charlesworth's records, "Cancerous mole -- removed," was written by Mr. Hall himself.  Since the Notation was made before Mr. Hall filled-out CUNA's Application, the Notation is proof of a misrepresentation -- in and of itself.  Mr. Hall was not a doctor.  He was therefore incapable of diagnosing himself with cancer, and it is logical to infer that Mr. Hall had been previously diagnosed by a doctor and/or treated for cancer.  Admittedly, Defendants have not discovered a pathology report for moles removed in 1996.  The discovery process, however, is not perfect.  Parties cannot always uncover all of the medical records which have existed at one

time or another. But, if Mr. Hall did not have cancer before 1999, why did he tell his doctors that he did?

**B.    The accuracy of the Notation is immaterial to its admissibility.**

Even assuming arguendo that the Notation was erroneous (which is denied), this is not a basis for excluding it from evidence. Since the Notation was written by Mr. Hall, the Notation would constitute an admission by a party-opponent. Under Federal Rule of Evidence 801(d)(2), the Notes specifically provide that, "No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of truthworthiness . . . calls for generous treatment of this avenue to admissibility." Note to Subdivision (d)(2) *Admissions* (underlining added). Further, even assuming the Notation was not written by Mr. Hall (which is denied), medical records are admissible into evidence under Fed. R. Evid. 803(4), and there is no requirement that the accuracy of the medical records be verified before admission.

Furthermore, whether the Notation itself is accurate, is immaterial to Plaintiff's bad faith claim. The only issue is whether CUNA acted reasonably in relying on the medical records, and if not, whether CUNA intentionally or recklessly disregarded its lack of a reasonable basis. Keefe

9

v. Prudential Prop. and Cas. Ins. Co., 203 F.3d 218, 225 (3rd Cir. 2000).  In

this case, CUNA reasonably relied upon the Notation because:  (1) The

Notation does not stand by itself, but was part of 12 medical records that all

indicate a history of cancer predating the Application; (2) medical records

are required by law to be kept accurately, 49 Pa. Code § 16.95; (3) aside

from the Notation, two other records refer to the removal of cancer in 1996;

and (4) medical records are frequently relied upon in legal proceedings to

prove the truth of the matter asserted in those documents, Fed. R. Evid.

803(4).

    Plaintiff argues that CUNA cannot rely on the Notation because

CUNA did not have the Notation at the time of its original decision.  Plaintiff

misunderstands the law of bad faith.  If there is a reasonable basis for

delaying or denying a claim, then -- "even if it is clear that the insurer did

not rely on that reason, there cannot, as a matter of law be bad faith."

Williams v. Hartford Cas. Ins. Co., 83 F. Supp.2d 567, 574 (E.D. Pa. 2000),

affirmed without published opinion, 261 F.3d 495 (3rd Cir. 2001).  It is also

important to note that Plaintiff does not confine herself to CUNA's

knowledge at the time of denial.  Rather, Plaintiff amended her Complaint

specifically so that she could rely on post-litigation conduct in support of her

bad faith claim. (Amended Complaint, ¶22-23). CUNA, therefore, must be permitted to rely on evidence disclosed during the litigation.

**C.    The testimony of Gencavage should not be excluded from evidence.**

Plaintiff argues that the testimony of Gencavage should be excluded from evidence because it is "based on an erroneous entry." (Plaintiff's Brief in Support of Its Motion in Limine, at 4). This argument is flawed for the reasons discussed above. Moreover, the proposed testimony of Gencavage cannot be construed as "erroneous." Dr. Charlesworth's Intake Sheet contains the Notation "Cancerous mole -- removed." (CUNA App., Tab "6B.") Gencavage will testify that the Notation was written by Mr. Hall. There is nothing erroneous about Gencavage's proposed testimony. He is simply stating that the Notation is in the handwriting of Mr. Hall. Plaintiff has presented no opposing expert testimony. Moreover, whether Mr. Hall wrote the Notation prior to filling-out CUNA's Application is directly relevant to this case, and because the Notation establishes knowledge by Mr. Hall, the Notation constitutes proof of a misrepresentation, in and of itself.

While Plaintiff suggests that Gencavage's proposed testimony contradicts the testimony of CUNA's doctor, this is not the case. Gencavage is a handwriting expert. Dr. Ansfield is a medical doctor. By Plaintiff's own admission, Dr. Ansfield did not even have the Intake Sheet

11

and Notation, at the time of his involvement in CUNA's decision. To suggest that Gencavage and Dr. Ansfield contradict each other is ridiculous. Plaintiff is comparing apples to oranges.

At his deposition, Dr. Ansfield acknowledged that the 1993 pathology report indicated a finding of "dysplastic nevus," and not cancer. However, he also stated that a finding of "dysplastic nevus" was a risk factor for cancer. (CUNA App., Tab "16," Dep. of Dr. Ansfield, at 10-11, 33-40.) The 1993 pathological report itself recommended follow-up. (CUNA App., Tab "6A.") While Dr. Ansfield was not in possession of the Notation, he did have Dr. Sharfman's medical records indicating that in 1996, Mr. Hall had a number of small moles removed from his left neck. (Ansfield Dep. at 60-61; CUNA App., Tab "6K.") Dr. Ansfield therefore felt there was a strong possibility of two different pathology reports -- one in 1993 and one in 1996. (Ansfield Dep. at 17, 33-34, & 43-44). As a result, there is no conflict between Gencavage's analysis of the Notation and Dr. Ansfield's testimony.

Plaintiff characterizes Gencavage's expert report as a "speculative report based upon a false premise that there was a cancerous mole removed in 1996." (Plaintiff's Brief, at 6). To begin with, the Gencavage report is not based on the premise that a mole was removed in 1996.

12

Gencavage compared the Notation to known handwriting samples. That is the premise of his expert report.

Plaintiff argues that the Gencavage report does not meet the required level of expert certainty.[2] To be admissible, the opinion of an expert witness must be rendered within a reasonable degree of certainty. Montgomery v. South Philadelphia Med. Group, Inc., 656 A.2d 1385, 1390 (Pa. Super. 1995). "Under Pennsylvania law, expert testimony need not be expressed in precisely the language used to enunciate the legal standard." Hall v. Babcock & Wilcox Co., 69 F. Supp.2d 716, 722 (W.D. Pa. 1999). "Whether an expert's opinion is reasonably certain must be decided after considering the expert's testimony in its entirety." Montgomery, 656 A.2d at 1390; see also Peerless Dyeing Co., Inc. v. Industrial Risk Insurers, 573 A.2d 541, 547 (Pa. Super. 1990). "[A]n expert need not testify with absolute certainty or rule out all possible causes of a condition . . . [t]hat an expert may, at some point during his testimony, qualify his assertion does not necessarily render his opinion inadmissibly speculative." Argust v. Dick Mackey Gen. Contracting Co., Inc., 568 A.2d 255, 258 (Pa. Super. 1990).

---

[2] "[I]n a diversity case such as this, state rules on the degree of certainty required of an expert's opinion apply." Heller v. Shaw Indus. Inc., 167 F.3d 146, 153 n.4 (3rd Cir. 1999).

While Gencavage admittedly does not use the "magic words" "within a reasonable degree of certainty," his report nonetheless contains the unqualified opinion that Mr. Hall wrote the Notation.  Gencavage states, "it is the opinion of this examiner that the writer of the [samples], Tommy B. Hall II, wrote the questioned handprinting 'Cancerous Mole -- Removed.'" (CUNA App., Tab 23).  Additionally, Gencavage provides analysis supporting his opinion.  He talks about the "questioned and standard writings" comparing favorably "in gross characteristics, including degree of skill, style, slant, lateral alignment, writing movement, letter formations, proportions and other characteristics."  He then states that, "All of the factors indicate that Tommy B. Hall II wrote the handprinting in question." Gencavage does not say some factors support his opinion and other factors do not.  He states that **ALL** of the factors support his opinion.

Based on the entirety of the Gencavage report, it is clear that his proposed testimony meets the standard of certainty required of expert testimony.

14

**D.**   **CUNA is not guilty of any discovery abuses, and it should not be precluded from offering a defense in this case.**

1. History of the Discovery Dispute.

In their Joint Case Management Plan, counsel for Plaintiff and Defendants agreed that each would serve no more than thirty (30) document requests.  (Line 6.503.)  On February 22, 2002, Plaintiff served Defendants with her first Request for Production of Documents, containing 27 document requests.  (Appendix, ***Tab "B."***)  On February 28, 2002, Plaintiff served Defendants with her Second Request for Production of Documents, requesting another 18 document requests.  The combined number of Plaintiff's requests exceeded that agreed upon by counsel.

On March 5, 2002, Plaintiff noticed the depositions of (1) Erin Hefty, (2) William Nardi, (3) Deb Haglund, (4) Barb Lutz, (5) Rich Fischer, (6) Mark Richardson (of CUNA's legal department), (7) the corporate designee most knowledgeable about CUNA profits and losses, (8) the President/CEO of CUNA, and (9) the corporate designee most knowledgeable about CUNA statistical data.  CUNA objected to some of the above depositions, and a discovery conference call was held with Judge Rambo.

By Order dated March 7, 2002, Judge Rambo denied Plaintiff's requests to depose a representative of CUNA's legal department and to depose CUNA's President, but permitted the following inquiry:

> 2) Plaintiff's request to depose a designated representative regarding CUNA's profits and losses is granted in part and denied in part as follows:
>
> a) Inquiry may be made of the designated representative concerning profits and losses <u>insofar as it is related to Plaintiff's theory regarding the profits of CUNA relative to its policy of its claims denial and policy rescission.</u>
>
> b) The overall profits and losses of CUNA can be furnished through the company's annual statement of profit and loss from the date of the incident to the present.
>
> 3) The request to depose a designated representative regarding statistical information on the claims denial and policy rescission is granted.

(underlining added).  Richard Fischer was CUNA's designated representative concerning profits and losses.  Due to limited notice, and disputes concerning the documents to be produced, Fischer's first deposition was limited in scope.  (*See* Appendix, ***Tab "C,"*** Dep. of Richard Fischer, 3/14/02).  Following that first deposition on March 14, 2002, Defendants' counsel allowed Fischer to be re-deposed, and Plaintiff's counsel agreed to limit and clarify his document requests.  (Fischer Dep., 3/14/02, at 35-40).  Specifically, counsel agreed that the document requests would be limited to profit and loss information relating to the credit

16

life, home mortgage protection, and individual life lines of business. (Fischer Dep., 3/14/02, at 38-39).  In addition, the document requests would be limited to the period from 1998 to the present.  (Fischer Dep., 3/14/02, at 36).

On March 20, 2002, CUNA responded to Plaintiff's Second Request for Production of Documents.  (*See* Exhibit "E" to Plaintiff's Brief).  As Plaintiff's combined requests for production exceeded 30, Defendants' counsel objected to requests 4 through 18 of the Second Request -- as those requests were numbers 31 through 45.   (*See* Exhibit "E" to Plaintiff's Brief).  Despite this objection, however, CUNA agreed to "provide those documents responsive to the Court's Order of March 7, 2002, as clarified by counsel's agreement on the record of Rich Fischer's deposition."  (Id.; underlining in original).

Prior to Fischer' second deposition on March 28, 2002, Defendants' counsel produced "a number [in the thousands] of records to plaintiff's counsel regarding profits and loss figures for three different product lines at CUNA Mutual Insurance Society, the home mortgage protection product, credit life, and also individual life products." (Appendix, **Tab "D,"** Dep. of Richard Fischer, 3/28/02, at 4).  Most of the documents were produced on March 26, 2002, and a summary sheet was produced via fax on March 27,

2002. (Id.) Plaintiff's counsel used those documents to depose Fischer on March 28, 2002.

After discovery closed, defense counsel attempted to have his handwriting expert, John Gencavage, examine the original medical records of Mr. Hall, copies of which had already been produced. Plaintiff's counsel objected, claiming discovery had already concluded. In accordance with Judge Rambo's standard practice, defense counsel set-up a telephone conference -- the stated purpose being to address Plaintiff's objection to Gencavage's examination of the medical records. As noted in CUNA's Supplemental Responses to Plaintiff's Second Request for Production of Documents, CUNA's lead defense counsel, Michael R. Kelley, was not able to participate in the conference. (See Exhibit "G" to Plaintiff's Brief, at p. 1). Instead, Charles Young, who -- at the time -- was new to the case, participated in the discovery conference.

While the stated purpose of the telephone conference was to address Gencavage's review of Mr. Hall's medical records, Plaintiff's counsel used this opportunity to address the Second Request for Production. Mr. Young was not aware of the reasons for CUNA's objections. Mr. Young also was not aware of counsel's agreement at the deposition of Richard Fischer. As a result, Plaintiff's counsel was successful in obtaining Paragraph 1b) of

Judge Rambo's Order of April 19, 2002, which states in relevant part that, "Defendants shall respond to questions 4 through 18 of Plaintiff's request for production of documents." (*See* Exhibit "F" to Plaintiff's Brief).

Despite the above, on May 30, 2002, CUNA provided Supplemental Responses to Plaintiff's Second Request for Production of Documents -- in accordance with the Court's Order of April 19, 2002. (*See* Exhibit "G" to Plaintiff's Brief). The Supplemental Responses enclosed a copy of CUNA's organizational chart, and they incorporated into the responses the thousands of documents provided on March 26, 2002, March 27, 2002, and at the second deposition of Richard Fischer on March 28, 2002. (Id. at p. 2).

On August 30, 2002, Defendants filed their Motion for Partial Summary Judgment, and supporting brief. Between May 30, 2002 (when Defendants produced their Supplemental Responses to the Plaintiff's Second Request for Production), and August 30, 2002 (when the Motion for Partial Summary Judgment was filed), Defendants' counsel heard nothing from Plaintiff's counsel regarding any alleged discovery issues.

On September 12, 2002, Plaintiff's counsel sent defense counsel a letter regarding Defendants' alleged failure to abide by the Court's Order of April 19, 2002. (*See* Exhibit "I" to Plaintiff's Brief). When Defendants'

counsel received the letter, it had been almost 3 1/2 months since Defendants produced the Supplemental Responses. It had been almost 5 months since Judge Rambo issued the Order. At that point, Defendants had provided Plaintiff with literally thousands of pages of documents, and Plaintiff had conducted numerous depositions of CUNA employees.

By letter dated September 17, 2002, Defendants responded that CUNA had fully complied with the Court's Order, and requested a clarification of Plaintiff's request. (*See* Exhibit "J" to Plaintiff's Brief). Following Plaintiff's response, Defendants' counsel reiterated his position that Plaintiff was "in receipt of all documents responsive to Plaintiff's Second Request for Production of Documents Nos. 4 through 18." (*See* Exhibit "L" to Plaintiff's Brief).

In Plaintiff's letter of September 12, 2002, Plaintiff threatened to "make arrangements for a conference with the Judge" regarding CUNA's alleged failure to comply with the Court's Order. (*See* Exhibit "I" to Plaintiff's Brief). Plaintiff never arranged for such a conference. Instead, on September 20, 2002, Plaintiff filed a Cross Motion for Partial Summary Judgment. Plaintiff thereafter did not make mention of the alleged discovery dispute until November 4, 2002, when her counsel filed the

Motion in Limine, seeking to prevent CUNA from presenting a defense in this case.

### 2. The Plaintiff's Request for Sanctions is Unfounded.

Plaintiff recites a partial history of the discovery between the parties, argues that CUNA has failed to produce important documents, and then cavalierly requests that CUNA be prohibited from offering a defense in this case. (Plaintiff's Brief, at 7). CUNA has maintained, and continues to maintain, that Plaintiff is "in receipt of all documents responsive to Plaintiff's Second Request for Production of Documents Nos. 4 through 18." (*See* Exhibit "L" to Plaintiff's Brief). Plaintiff's request for sanctions is totally unfounded.

As of the present time, <u>CUNA has produced literally thousands of pages of documents, and responded to every single one of Plaintiff's discovery requests.</u> Plaintiff fails to identify or even acknowledge the documents that CUNA has provided. By Order dated March 7, 2002, the Court limited the scope of discovery regarding profits and losses to information that was relevant to Plaintiff's theory of post-claim underwriting. (*See* Order, 3/7/02, at ¶2a). Plaintiff fails to acknowledge or discuss this limitation. At Richard Fischer's deposition on March 14, 2002, counsel

reached an agreement limiting the scope of discovery to certain lines of insurance.  Plaintiff fails to acknowledge or discuss this limitation.

To date, Plaintiff has never filed a Motion to Compel or Motion for Sanctions.  Further, she does not cite a single case in support of the requested sanction.

3.  The Plaintiff's Request for Sanctions is Legally Unsupportable.

In considering whether the exclusion of evidence is an appropriate sanction for the failure to comply with discovery duties, a Court's discretion is not unlimited.  Flaherty v. M.A. Bruder & Sons, Inc., 202 F.R.D. 137, 141 (E.D. Pa. 2001).  Due process requires that, "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery.'" General Ins. Co. of America v. Eastern Consol. Util., Inc., 126 F.3d 215, 220 (3rd Cir. 1997).  In the instant matter, Plaintiff has failed to identify the "claim" at issue, and she has failed to identify how her proposed discovery sanction is "specifically related" to that claim.  It is unclear what particular document or information is at issue.  It is equally unclear how the requested sanction is at all related to the alleged failure to turn over such document or information.

Throughout her brief, Plaintiff implies that there are other documents "out there," and that CUNA has failed to disclose them. There are no such responsive documents. Although CUNA's counsel has repeatedly informed Plaintiff's counsel of this fact, Plaintiff makes no effort to identify the documents that have allegedly not been disclosed. Plaintiff has also done nothing to show that CUNA's counsel is incorrect. Essentially, Plaintiff is seeking sanctions for the failure to turn over non-existent documents.

Aside and apart from the issue of whether documents have been disclosed, Plaintiff has also failed to address the issue of prejudice. Before imposing a discovery sanction, a court must consider how the moving party has been prejudiced. Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 148 (3rd Cir. 2000); Flaherty, 202 F.R.D. at 141. In this case, Plaintiff has not only failed to describe the information that she is seeking. She has also failed to identify why the information is relevant, or how she was prejudiced by CUNA's alleged failure to produce the information. In the absence of such evidence of prejudice, no sanction is justified.

## IV. **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion in Limine should be denied in its entirety. There is no justification for excluding the Notation in Dr. Charlesworth's Intake Sheet or the proposed testimony of CUNA's

handwriting expert, John Gencavage.  In addition, there is no justification

for sanctioning CUNA by preventing it from presenting a defense or

otherwise.

McNEES WALLACE & NURICK LLC

By_____

Michael R. Kelley
Charles T. Young, Jr.
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
Phone:  (717) 237-5322
Fax:  (717) 237-5300

Attorneys for Defendants

Dated:  November 19, 2002

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Nancy Hall, individually and** | : | **CIVIL ACTION - LAW** |
| **as the Representative and** | : | |
| **Administratrix of the Estate of** | : | |
| **Tommy Hall, deceased, her** | : | |
| **husband,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **1:01-CV-1265** |
| | : | |
| **CUNA Mutual Group, CUNA** | : | |
| **Mutual Insurance Society,** | : | |
| **Defendants** | : | **(Judge Christopher C. Conner)** |

## RULE 7.8(b) CERTIFICATE

In accordance with M.D. Pa. LR 7.8(b)(2), I hereby certify that the foregoing Brief, including footnotes, consists of 4,664 words as calculated by the word-count feature of Microsoft Word.

McNEES WALLACE & NURICK LLC

By_____

Michael R. Kelley
Charles T. Young, Jr.
100 Pine Street
P.O. Box 1166
Harrisburg, PA  17108-1166
(717) 237-5322

Attorneys for Defendants

Dated:    November 19, 2002

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date the foregoing document was served by U.S. first-class mail, postage prepaid, upon the following:

Stephen R. Pedersen, Esquire
214 Senate Avenue, Suite 602
Camp Hill, PA  17011

Catherine Mahady-Smith, Esquire
3115-A N. Front Street
Harrisburg, PA  17110

Charles T. Young, Jr.

Attorney for Defendants

Dated:      November 19 , 2002