2 TO G

ORIGINAL

FILED
HARRISBURG, PA

DEC 2 3 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Nancy Hall, individually and as the Representative and Administratrix of the Estate of Tommy Hall, deceased, her husband, **Plaintiff** | : : : : : : | **CIVIL ACTION - LAW** |
| **v.** | : : | **1:01-CV-1265** |
| Cuna Mutual Group, Cuna Mutual Insurance Society, **Defendants** | : : : | **(Judge Christopher C. Conner)** |

---

## APPENDIX TO DEFENDANTS'
## PRETRIAL MEMORANDUM

---

Michael R. Kelley
Charles T. Young, Jr.
McNEES WALLACE & NURICK LLC
P.O. Box 1166
100 Pine Street
Harrisburg, PA 17108-1166
Phone: (717) 237-5322
Fax: (717) 237-5300

Dated: December 23, 2002

*A*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Nancy Hall, individually and | : | **CIVIL ACTION - LAW** |
| as the Representative and | : | |
| Administratrix of the Estate of | : | |
| Tommy Hall, deceased, her husband, | : | |
| Plaintiff | : | |
| | : | |
| **v.** | : | **1:01-CV-1265** |
| | : | |
| Cuna Mutual Group, Cuna Mutual | : | |
| Insurance Society, | : | |
| Defendants | : | **(Judge Christopher C. Conner)** |

**DEFENDANT'S CONCISE STATEMENT
OF UNDISPUTED MATERIAL FACTS**

Defendants, by and through their counsel, McNees Wallace & Nurick LLC, hereby submit this Concise Statement of Undisputed Material Facts.

1.     In November, 1998, Nancy and Tommy Hall refinanced the mortgage on their home in Fayetteville, Franklin County, Pennsylvania.  As part of refinancing the mortgage, the Halls applied for a credit life insurance policy, on Mr. Hall's life only, through their lender Patriot Federal Credit Union.

2.     On November 18, 1998, Mr. Hall submitted to CUNA a "Members Home Mortgage Protection II Application" (the "Application").  Part (B) of the Application asked the following question:

1.      Have you ever been treated for or diagnosed by a member of the medical profession as having any of the following (Please check the box and circle condition(s) that applies ).

Diabetes; high blood pressure; chest pain; heart, blood, blood vessel, lung or breathing disorders; cancer; epilepsy; stroke; pneumonia(s); arthritis, brain, mental, nervous, back, neck, joint or muscular disorders, stomach, intestines, liver, pancreas, or kidney disorders, cirrhosis, drug or alcohol abuse, acquired immune deficiency syndrome or AIDS related complex, or tested positive for antibodies to the AIDS virus?  (NOTE TO RESIDENTS OF ME, ND, VT AND WI:  You do not have to disclose positive test results for the antibodies to the AIDS Virus )

In response to the above question, Mr. Hall checked the box marked, "No."

3.      CUNA had previously issued a policy of "Group Mortgage Insurance Decreasing Term Life" to Patriot Federal Credit Union.  On January 1, 1999, CUNA issued a Certificate of Insurance to Mr. Hall (the "Policy").

4.      The Policy identified "CUNA Mutual Insurance Society of Madison, Wisconsin," as the issuer of the policy.

5.      "CUNA Mutual Group" is not a corporation, partnership, limited liability corporation, limited liability partnership, professional corporation, limited partnership, or other legal entity.

6.      CUNA Mutual Group is a trademark, trade name, and/or marketing tool.

7.      Under the Policy, in the event Mr. Hall misstated material information on the Application, CUNA had the right to rescind the Policy and return the premiums. CUNA retained this right until 2 years after the Effective Date of Insurance.

8.      On November 4, 1999, Mr. Hall died as a result of a metastatic melanoma.

9.    A metastatic melanoma is a malignant mole or tumor, which manifests itself at a secondary site – the malignant cells having previously spread by way of the lymphatic system, bloodstream, or some other avenue.

10.    Following Mr. Hall's death, Mrs. Hall submitted a claim for benefits, along with a copy of Mr. Hall's Certificate of Death.

11.    The claim submitted by Mrs. Hall was reviewed by Brenda Larson, a credit insurance underwriter at CUNA.

12.    The Certificate of Death indicated that Mr. Hall had died of a metastatic melanoma.

13.    Prior to denying Plaintiffs' claim, CUNA requested Mr. Hall's medical records from treating physicians Drs. Guthrie/Hurley, Charlesworth, Chicklo, Cashdollar, and Enders.

14.    Mr. Hall's medical records contain the following information with regard to Mr. Hall's medical history:

   a) 4/13/93 Pathological Report, Chambersburg Hospital: excision of "dysplastic nevus, skin (back)";

   b) 4/30/98 New Patient Intake form, Dr. Charlesworth:  history related by patient of "cancerous mole - removed 96" and two back surgeries in 1989 and 1993;

   c) 4/30/98 Office Note of Dr. Charlesworth:  patient related history of "? melanoma removed back 1996";

   d) 1/15/99 Intake Note of Dr. Chicklo:  surgical history related Two spinal surgeries in 1989 and 1993, "mole – ca  on back exc. (1993)";

   e) 1/22/99 Patient History of Dr. Chicklo:  "spinal surgery and he had a malignant mole excised in 1993 on his back.";

   f) 2/17/99  New Patient Information Record/Dr. Enders:  Patient Medical History: "malignant mole on back 93"

g) 2/17/99  Letter from Dr. Cashdollar to Dr. Chicklo:  "I had the pleasure of seeing Tommy Hall in medical oncology consultation on Wednesday, 2-17-99. As you are well aware, Mr. Hall demonstrated a left in scapular dermal lesion in 1993.  Pathology revealed a malignant melanoma...."  "PMH is most notable for the malignant melanoma.  Surgical resection in 1993.  The patient also reports two lumbar spinal procedures in 1989 and 1993 for herniated disk disease";

h) 2/18/99 Chambersburg Hospital/Dr. Cashdollar note:  "History of Melanoma";

i) 2/23/99  Dr. Enders note:  "subj: 43 yo white male with melanoma in 1993";

j) 3/15/99  Colonoscopy Report/Dr. Enders:  "This is a 43 year-old white male who had a melena [sic] removed in 1993...";

k) 7/15/99  New Patient Clinic Visit Report/Dr. Sharfman:  "This is a 44-year-old white male who was in his usual state of health until 1996 when he had a number of small moles removed on his left neck that was being irritated by his shirt.  In 1993, a mole developed on his left shoulder blade.  It developed a bright red rim around it.  It was excised.  Pathology showed a malignant melanoma";

l) 7/26/99  Chambersburg Hospital Radiologists Report:  "History: Melanoma";

m) 9/30/99  Inpatient Record/David Weinreich, M.D.:  History of Present Illness:  "The patient was first diagnosed with melanoma in 1993 and underwent a wide local excision of a shoulder lesion.  It subsequently recurred in his neck, which was excised in January of 1999".

15.    On December 11, 1998 (3 weeks after Mr. Hall filled out the Application for CUNA), Mr. Hall returned to Dr. Charlesworth, complaining of a lump on the inside of his throat.  The lump later turned out to be cancerous, specifically the metastatic melanoma which caused Mr. Hall's death.

16.    After Larson collected Mr. Hall's medical records, she had them reviewed by Dr. Thomas Ansfield.  Dr. Ansfield is a practicing physician, a specialist in internal medicine, and a consulting medical director with CUNA.

17.    By letter dated February 10, 2000, CUNA notified Mrs. Hall of its decision. It denied Plaintiff's claim, rescinded the Policy, and returned the premiums to Plaintiff.

McNEES WALLACE & NURICK LLC


By _____
      Michael R. Kelley
      Charles T. Young, Jr.
      100 Pine Street
      P.O. Box 1166
      Harrisburg, PA 17108-1166
      Phone:  (717) 237-5322
      Fax:  (717) 237-5300

Attorneys for Defendants

Dated:

Expert Report
Nancy Hall, individually and as the Representative and Administratrix of the
Estate of Tommy Hall, deceased, her husband v. CUNA Mutual Insurance Society

Prepared by
Charlotte A. Lee, M.D.

Overview

I have reviewed in detail the available documents provided to me pertaining to the
above matter. My purpose in doing so is to determine, to the best of my ability, whether
or not CUNA Mutual Group handled the Hall Claim in compliance with industry
standards and whether CUNA's decision to deny coverage and rescind the Hall
certificate of insurance was a reasonable act under the facts and circumstances. I hold
the opinions set forth in this report to a reasonable degree of certainty in my role as an
expert Medical Director. I have reviewed the following documents:

1.    The file in CUNA's possession at the time of its decision to deny Mrs. Hall's claim
      and rescind the policy, including the application for the Home Mortgage
      Protection II ("HMP") insurance, the certificate of insurance, the claim notice,
      correspondence between CUNA and Mrs. Hall and between CUNA and the
      doctors seen by Mr. Hall, the letter denying coverage and the medical records in
      CUNA's possession at the time of the decision to deny coverage.

2.    The information regarding CUNA's referral of the matter to the Pennsylvania
      Attorney General for fraud investigation.

3.    The April 30, 1998 intake form from Dr. Ernest Charlesworth's office.

4.    The deposition transcript and copy of the videotape of Mrs. Hall's deposition
      taken in this lawsuit.

5.    The deposition transcript and deposition for use at trial transcript of Tommy Bob
      Hall taken in the underlying malpractice action against Hall's doctors

6.    The deposition transcripts of the CUNA employees/consultant who have been
      taken in this case, including Brenda Larsen (the underwriter who investigated the
      claim), Dr. Thomas Ansfield (CUNA's consulting medical director who reviewed
      the medical documents and concurred in the decision to deny the claim), Michael
      Stel (who referred the case to the Pennsylvania Attorney General for suspected
      insurance fraud), Rich Fischer (Product Manager for the HMP product), Barbara
      Lutz (Product Manager for individual life policies with CUNA Mutual Insurance
      Company) and Bill Nardi (an underwriter who trained Brenda Larsen).

7.  The deposition transcripts of Dr. Hurley (taken in the malpractice action), Dr. Charlesworth, Dr. Chicklo, Dr. Enders, Dr. Cashdollar, and Dr. Sharfman.

8.  CUNA's underwriting guidelines and procedures.

9.  Summary information regarding claims, claims denied, claims rescinded and other statistical information.

10. Information regarding CUNA policies and procedures for reporting insurance fraud.

11. Information on CUNA policies and procedures produced to Plaintiff in discovery (other than identified above).

12. Plaintiff's complaint.

13. CUNA's Answer and Affirmative Defenses to the Complaint.

14. Plaintiff's Amended Complaint.

15. The Unfair Insurance Practices Act.

16. Chapter 73 of the Pennsylvania Code (dealing with credit life insurance).

17. A copy of the Pennsylvania bad faith statute.

I.  Observations Regarding Claim Handling by CUNA Mutual Insurance Society

Review of Insurance Application and Medical Records

Before any decisions are made regarding payment of a claim, the customary and accepted practice is to review the insurance application, in order to determine whether or not the disease from which a claimant died was admitted to on the application.  If the disease was admitted to (but the insurance policy was still issued) and the claimant dies from the same disease that was admitted to on the application, there is no question but to pay the claim.  However, when it is initially discovered that the cause of death was a condition that was not admitted to at the time of the application (as in Mr. Hall's case), an investigation of all available medical records should be undertaken in order to establish whether or not the condition that was the cause of death was indeed known to the applicant at the time of the application for the insurance.  Such is the situation here, where CUNA's underwriter, Brenda Larsen took the appropriate action to conduct an investigation before making a final determination of whether or not to pay the death claim.

CUNA, specifically Brenda Larsen, obtained all medical records available and pertinent to the medical condition from which Mr. Hall died.  CUNA undertook the appropriate steps to assure that all records available were obtained.  This is the industry standard for adjudicating any claim, and was done so expediently by CUNA.  CUNA received the notice of claim on November 10, 1999.  Its investigation began shortly thereafter.  Within 35 days CUNA corresponded with Mrs. Hall to advise her of the status of her claim and to advise her that medical information needed to be obtained and reviewed.  In less than two months, CUNA obtained the names of health providers from Mrs. Hall, contacted the health providers in writing, received the available records, reviewed the records, consulted with its Medical Director, Thomas Ansfield, M.D., and notified Mrs. Hall of its decision to deny the claim (by letter on February 10, 2000).  Under the Unfair Insurance Practices Act, an insurer's obligation is to "promptly" act upon claims, and to "conduct a reasonable investigation upon all available information." 40 P.S. §1171.5(10).  In my opinion, CUNA unquestionably acted "promptly" and conducted a reasonable investigation of Mrs. Hall's claim.

After the records were obtained, they were thoroughly reviewed by the underwriter and Dr. Ansfield, and a decision was made only after the available medical history of Mr. Hall was known, and the chronology of the events of the discovery and knowledge of the melanoma were known.  Specifically, several references to a history of malignant melanoma were interspersed throughout the physicians reports, and such knowledge to a physician is customarily obtained from the patient or other physicians, or their records.  Ms. Larsen's decision to deny the claim was made only after she had thoroughly reviewed all the medical records, and she, correctly so, did not rely on only the path report from the 1993 removal of the skin lesion for her final determination.  It should be noted that it is customary and accepted practice within the insurance industry to rely

upon medical records in reaching decisions to pay or deny a claim. In my view, this reliance is reasonable, as physicians are required by law to make sure that their records are accurate, legible and complete. All of the physicians deposed who were asked this question readily conceded that he understood the law and understood that his medical records would be relied upon by others.

Underwriters are always cautioned about not making a decision based on any one fact of the situation, but, instead, putting together the total picture before doing so. The more senior underwriting persons, namely Barbara Lutz and Bill Nardi, who gave depositions attested to the fact that Ms. Larsen acted correctly, based on CUNA's claim adjudication guidelines, and I attest to the fact that this is within the industry guidelines. Dr. Thomas Ansfield, as Medical Consultant, was properly asked his opinion, and he also concurred with Ms. Larsen. I feel that Ms. Larsen had been properly trained to handle this claim, and the proper persons were asked for advice regarding the final decision to deny the claim.

## II. CUNA's Initial Decision to Deny Coverage and to Rescind the Policy

It is my opinion that CUNA's decision to deny the coverage and to rescind the policy was justified, according to the guidelines as put forth by CUNA for handling of claims, and according to the industry standard that was adhered to by CUNA. CUNA did not breach the contract of insurance, as CUNA acted within the confines of the regulations for maintaining the policy, as stated in the policy, and as signed for by Mr. Hall. CUNA did not fraudulently report Mr. Hall (or his Administratrix) to the Office of the Attorney General. Insurance Companies in the Commonwealth of Pennsylvania, as well as other states, are required by the Office of the Attorney General to report any and all acts by insureds that are suspected by that Company to be fraudulent acts. This is done in an attempt to curtail fraudulent usage of insurance policies. Regardless of the final determination by the Office of the Attorney General regarding whether a criminal investigation will be initiated, the insurance company is obligated to report cases where it reasonably suspects that fraud has occurred.

There are several mandates set forth in the Unfair Insurance Practice Act that are important here. I call attention to 40 P.S. §1171(10) of the Act. Section (10) outlines actions which, if committed or performed with such frequency as to indicate a business practice shall constitute unfair claim settlement or compromise practices. After carefully reading the actions, notably number (iv) "Refusing to pay claims without conducting a reasonable investigation based upon all available information", it is obvious that CUNA complied with the mandates as set forth in that ACT.

CUNA did not negligently deny the claim. The claim was denied only after all resources had been explored to determine whether or not the deceased knew the diagnosis of cancer at the time of the application for the insurance. In this case, the investigation showed that the deceased did know of the diagnosis of cancer at the time of the

application. Therefore, the denial of the claim was certainly not done in a negligent way. It was denied based on medical facts extracted from Mr. Hall's medical records.

That CUNA acted in bad faith is a false allegation, as CUNA, at no time, had the intent of purposefully denying a claim that it felt was payable. There was certainly no attempt to embarrass or humiliate Mrs. Hall in denying the claim. The denial was based on sound claim adjudication principles, and followed the policies and procedures of CUNA mutual. Such policies and procedures fall well within the industry standards. The actions toward an insurance company that has acted in bad faith, according to the Pennsylvania Bad Faith Statute are not warranted against CUNA.

### III.  The Claim of Ongoing Bad Faith Conduct in the Amended Complaint

Mrs. Hall asserts in her Amended Complaint that CUNA, as a result of information exchanged in the lawsuit, is aware that no pathology report exists that concludes that Mr. Hall was diagnosed with or treated for cancer prior to the date of the insurance application (November 18, 1998). I do not know if this assertion is true, but I have not been provided with such a pathology report. Based upon my review of this case, however, CUNA did learn after the lawsuit commenced that Mr. Hall, in his own writing, told Dr. Charlesworth that he had a "cancerous mole removed – '96" in the medical intake form dated April 30, 1998. This was nearly seven months prior to the application for insurance. I'm told that a handwriting expert was consulted and that he concludes that the handwriting noting the history of cancer is indeed that of Mr. Hall. Whether a pathology report has been found or not, this statement in Mr. Hall's own hand is conclusive proof that Mr. Hall knew he had cancer prior to his application for insurance, and that he was not truthful when he completed the application. In my expert opinion as a Medical Director, this is more than a reasonable basis upon which to deny Mrs. Hall's claim.

Charlotte A. Lee, M.D.

Dated:  7-25-02

EXPERT RESOURCES, INC
4700 N. PROSPECT RD
PEORIA HEIGHTS, IL 61616

### Charlotte A. Lee, M.D.

### Curriculum Vitae

| Education | | | |
|---|---|---|---|
| | A.A. 1964 | -- | Stephens College, Columbia, Missouri |
| | B.A. 1966 | -- | Fisk University, Nashville, Tennessee |
| | M.D. 1970 | -- | Indiana University School of Medicine Indianapolis, Indiana |

Internship
1970 - 71    --    St. Joseph's Hospital
Phoenix, Arizona

Residency in Internal Medicine
1971 – 73    --    Maricopa County General Hospital
Phoenix, Arizona

Fellowship in Clinical Cardiology
1976 – 77    --    University of Minnesota School of Medicine
Minneapolis, Minnesota

Board Certification
1985    --    American Board of Insurance Medicine

Medical Review Officer Certification
1997    --    AAMRO

**Professional
Designations**

1987    --    Fellow, Life Management Institute

Member    --    American Academy of Insurance Medicine
Former Member of the Executive Committee

Member    --    American Council of Life Insurance

Staff Member    --    St. Francis Regional Medical Center
Shakopee, Minnesota

Student    --    CLU designation, currently

Clinical Attending Physician --  University of Kansas Medical School
Department of Internal Medicine

**Licensure**    State of Minnesota
State of Indiana
State of Kansas

Charlotte A. Lee, M.D.
Page 2

2001—Present    Empire General Life Assurance Corporation
Vice President and Medical Director

**EXPERT RESOURCES, INC**
**4700 N. PROSPECT RD**
**PEORIA HEIGHTS, IL 61616**

|  |  |  |
|---|---|---|
|  | 1997 --2001 | Empire General Life Assurance Company<br>Medical Consultant |
| **Professional<br>Experience** | 1997 –2001 | Osborn Laboratories, Inc.<br>Vice President and Medical Director |
|  | 1998_ Present | Transamerica Life Insurance Company<br>Medical Consultant |
|  | 1997 – 1995 | Lincoln National Life Insurance Company<br>Assistant Vice President and Medical Director |
|  | 1995 – 1991 | IDS American Express Life Insurance Company<br>Medical Director |
|  | 1987 – 1995 | LifeUSA Insurance Company<br>Medical Director |
|  | 1985 – 1995 | Sons of Norway Insurance Company<br>Medical Director |
|  | 1985 – 1992 | The Prudential Insurance Company<br>Medical Consultant |
|  | 1984 – 1985 | Northwestern National Life Insurance Company<br>Medical Consultant |
|  | 1984 – 1993 | Independent Administration Company<br>Medical Director |
|  | 1984 – 1993 | Ministers Life Insurance Company<br>Medical Director |
|  | 1979 – 1993 | ITT Hartford Life Insurance Corporation<br>Medical Director |
|  | 1978 – 1995 | St. Francis Regional Medical Center<br>Shakopee, Minnesota<br>Staff Internist |
|  | 1976 – 1992 | Allianz Life Insurance Company<br>Medical Consultant |
|  | 1973 – 1978 | Pilot City Regional Medical Center<br>Minneapolis, Minnesota<br>Attending Physician, Internal Medicine |
|  | 1973 – 1990 | Hennepin County Medical Center<br>Minneapolis, Minnesota<br>Instructor, Department of Internal Medicine and<br>Department of Family Practice |



# TIM TERRY

CONSULTANT, LIFE AND DISABILITY INSURANCE

**PRESIDENT**
CHUBB SOVEREIGN (1975-93)

128 DESERT WEST DRIVE
RANCHO MIRAGE
CALIFORNIA 92270
TELEPHONE (760) 770-4479
FAX (760) 770-4479
TAX ID# 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

**EXECUTIVE VICE PRESIDENT**
CHUBB LIFE AMERICA (1987-93)

MEMBER, BOARD OF DIRECTORS
CHUBB SOVERIGN LIFE (1964-93)
CHUBB LIFE AMERICA (1987-93)
UNITED LIFE (1987-91)
VOLUNTEER STATE LIFE (1987-91)
COLONIAL LIFE (1987-93)

July 25, 2002

I have been asked to examine the propriety of CUNA Mutual Insurance Society's ("CUNA") handling of the claim for life insurance benefits submitted by Nancy Hall on a policy insuring the life of her husband, Tommy B. Hall. I have set forth below in this report my background qualifications, the materials that I have examined, and my opinions concerning CUNA's handling of Mrs. Hall's claim for benefits. I hold the opinions expressed in this report to a reasonable degree of certainty.

1.    Qualifications: President and Chief Operating Officer, Chubb Sovereign Life insurance Company, a life and disability insurer (1975-1993). Ranking officer, Company Claims Committee. See attached Curriculum Vitae. (Schedule I)

II.    Publications:    (See Schedule 1)

III.    Testimony:    (See Schedule 2)

IV.    Material Reviewed: Nancy Hall's depo w/exhibit(s); Charlesworth depo, Cashdollar, Chicklo depos; Hurley depo; Enders depo, Sharfman depo, Ansfield depo, Nardi depo, Fischer depo, Lutz depo, Larson depo, Stel depo, T. Hall II depo - 10-19-99, T. Hall II depo - 10-20-99. The file in CUNA's possession at the time of its decision to deny Mrs. Hall's claim and rescind the policy. The information regarding referral of the matter to the Pennsylvania Attorney General for fraud investigation. The April 30, 1998 intake form from Dr. Ernest Charlesworth's office. CUNA's underwriting guidelines and procedures. Summary information re claims, claims denied, claims rescinded and other statistical information. Information regarding CUNA policies and procedures for reporting insurance fraud. Information on CUNA policies and procedures produced to Plaintiff Plaintiffs complaint. CUNA's Answer and Affirmative Defenses to the Complaint. Plaintiffs Motion to Amend the Complaint and proposed Amended Complaint. Merck Manual 2000 Edition. T. Hall Video Tape. N. Hall Video Tape, Part I. N. Hall Video Tape, Part II. Schwartz, Doherty reports. Also reviewed: Pennsylvania Bad Faith Statute, Unfair Insurance Practices Act, Regulations re unfair claims practices, and Chapter 13, Credit Life Insurance and Credit Accident Regulations.

V.    Opinion:  The Company's processing of Mrs. Hall's claim was reasonable and appropriate and conformed to industry standards and applicable laws and regulations.

1.    The claim handling process proceeded from an investigation and analysis performed by Credit Insurance Underwriter Brenda Larson in consultation with Underwriting Manager William Nardi.  Nardi's experience in underwriting dated back to 1979 when he was first employed by CUNA. Larson had been a Medical Claims Examiner with CUNA from August, 1997 to October, 1999.  She became a Credit Insurance Underwriter in October, 1999.  Larson also consulted with CUNA's Medical Director, Thomas Ansfield, M.D.

2.    The applicant, Tommy B. Hall, died November 4, 1999.   Mrs. Hall notified Patriot Federal Credit Union of his death, and Patriot acknowledged receipt of the notice immediately, and forwarded a completed claim notice to CUNA by facsimile dated November 10, 1999.  Within six days after his death, CUNA received the completed claim form along with the death certificate; claim investigation commenced November 12, 1999.  On December 15, 1999 the Company advised the beneficiary that certain additional medical information was necessary to complete its claim evaluation.

3.    On February 10, 2000 the beneficiary was advised that the policy was being rescinded because the applicant had not revealed his 1993 doctor's visit and that had the Company been made aware of the medical information revealed during that visit it would not have issued the policy.  The February 10 letter states at its close: "If you have any questions please contact me at 1-800-356-2644, extension X7475."

4.    CUNA handled the claims process in this case in a fair and prompt manner.  The "Unfair Insurance Practices Act", 40 P.S. §1171.1 et seq., proscribes the failure to act "promptly" in acknowledging and acting upon a notice of claim, if such failure is performed with such frequency as to be considered a business practice.  I have been provided with no information which suggests that CUNA regularly fails to acknowledge or act upon claims in a prompt manner, and it certainly did not do so with respect to the claim notice submitted on behalf of Mrs. Hall.

VI.    Opinion:  CUNA's decision to rescind the policy was appropriate, and was based on the applicant's inaccurate response to Medical History questions asked on its application - and the fact that had the questions been answered accurately, the Company would not have issued the policy.

1.    When the application was completed on November 18, 1998 applicant Hall denied that he had been treated for a back disorder and he denied that he had been treated for or diagnosed as having cancer.

In November 1989, the applicant Hall was operated on for a herniated disk in his back. In January 1993 he was again operated on for a herniated disk in his back.

{A366792:}                                      - 2 -

Although his denial of a history of a back disorder is not material to the underwriting of this case, it raises credibility issues regarding his other responses.

2.      On April 30, 1998, seven months prior to the completion of his application to the Company, the applicant consulted with Dr. Charlesworth.  Dr. Charlesworth's notes reveal: "Prior Medical History: ? melanoma removed back (?) 1996 ... medical problems" "Cancerous mole - removed 96 (sic?) Dr. Guthrey (?)"

On January 15, 1999 Dr. Chicklo's intake form reveals the following patient history: "Mole on back CA excision '93."

On February 17, 1999 Dr. Enders - new patient form reveals "patient with (malignant) melanoma in 1993."

On July 15, 1999 Dr. Sharfman's new patient visit report reveals "1993 malignant melanoma."

3.      The medical records cited above provide a reasonable basis on which CUNA could conclude that the applicant believed that he had a history of cancer prior to the date of his application.  It is common and acceptable practice for an insurance company to rely on the information contained in medical records.  In this case, there was overwhelming evidence in the medical records that Mr. Hall had a history of malignant melanoma prior to the date of the application.  Had Mr. Hall answered truthfully according to his own belief, CUNA would have obtained records revealing his history of cancer.  In addition to the medical records obtained by CUNA before its initial decision to deny the claim and rescind the policy, CUNA also received during the lawsuit an April 30, 1998 intake form from Dr. Charlesworth's office.  This document was inexplicably missing from the other records sent by Dr. Charlesworth to CUNA while CUNA was still investigating the claim.  In my opinion, this intake form is powerful confirmation that CUNA correctly denied the claim.  This intake form lists a history of "cancerous mole removal – '96."  I am advised that a handwriting expert has established that Mr. Hall wrote this entry in the form.  This entry, made nearly seven months prior to the application for insurance, eliminates any doubt that Mr. Hall knew he had a history of cancer at the time of his application.  He obviously knew of his own history of cancer.  According to CUNA's underwriting standards, the application would have been declined if CUNA had known of this information.  The policy therefore was properly rescinded.

VII     Opinion:  The Company's actions in complying with state directives to report the suspicion of fraud were reasonable in that:

1.      The Company's own investigation revealed that the applicant had answered questions concerning his health history inaccurately: He concealed the fact that had undergone two separate operations for a back disorder - a herniated disk; he concealed his belief - stated seven months previously that he had a history of cancer.

2.      The state of Pennsylvania zealously and repeatedly exhorts insurance Company's doing business in the state to report instances of "suspected fraud." For example on April 4, 2000 in a letter to CUNA the office of the Pennsylvania Attorney General (AG) stated: "our primary concern is simply that suspected fraud is reported." Copies of press releases from the AG's office publicizing its fraud prosecutions were enclosed with this letter.

3.      At the time the Company advised the state of its suspicion of fraud, the beneficiary had taken no action to resist the rescission of the policy. Certainly it was in the Company's best interest to do nothing that would encourage the beneficiary to resist the rescission process. Nevertheless, the Company advised the beneficiary of its action in obliging the AG's office by reporting its suspicion of fraud--thus enabling her to arrange a defense rather than being taken by surprise. This had the effect of causing her to seek legal advise which ultimately resulted in her resisting the rescission through this present action.

VIII    Opinion: Post Claim Underwriting did not occur in this case.

1.      The applicant denied that he had any medical history regarding those conditions inquired about on the Company's application form. Thus, according to existing Company practice, no underwriting in the form of inquiries to medical practitioners were warranted prior to the issuance of this policy.

2.      Post Claim Underwriting occurs when a Company fails to complete medical underwriting and resolve all reasonable questions arising from information submitted to it on its application form prior to policy issue. In this case there were no such questions to resolve - the applicant denied any history of medical disorders that the Company questioned on the application.

IX      Summary Opinion:   The Company's actions in connection with the Hall claim were reasonable in that they conformed to industry standards and applicable laws and regulations. CUNA promptly processed the claim, communicated with Mrs. Hall quickly when it determined it needed more information, analyzed the available medical information, and made follow-up requests where appropriate. Before making the decision to deny the claim and rescind the policy, CUNA called upon its Medical Director, Dr. Ansfield, to review the materials. Both Brenda Larson and Dr. Ansfield believed that, based upon all the facts before them, that Mr. Hall misrepresented his history of cancer, and that his misrepresentation was material to the risk. I concur that Brenda Larson's and Dr. Ansfield's conclusions had a reasonable basis.

_____
TIM TERRY

# TIM TERRY

CONSULTANT, LIFE AND DISABILITY INSURANCE

PRESIDENT
CHUBB SOVEREIGN (1975-93)

128 DESERT WEST DRIVE
RANCHO MIRAGE
CALIFORNIA 92270

EXECUTIVE VICE PRESIDENT
CHUBB LIFE AMERICA (1987-93)

TELEPHONE (760) 770-4479
FAX (760) 770-4479
TAX ID# 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

MEMBER, BOARD OF DIRECTORS
CHUBB SOVERIGN LIFE (1964-93)
CHUBB LIFE AMERICA (1987-93)
UNITED LIFE (1987-91)
VOLUNTEER STATE LIFE (1987-91)
COLONIAL LIFE (1987-93)

## PRIOR TESTIMONY

Bander v. Warren - Los Angeles Superior court, 1995
Morse v. Federal Kemper - Sacramento S.C. - 1995
Rubin v. Gradman - Los Angeles S.C. - 1996
Philip v. Jackson National - Los Angeles S.C. - 1995
Hawthorne v. Jackson National - Los Angeles S.C. 1995
Doe v. Paul Revere - Honolulu S.C. - 1995
Mitchell v. John Hancock - Albuquerque S.C. - 1995
State Farm v. Linden - San Francisco Arbitration - 1996
Green v. Monumental - Santa Rosa S.C. - 1996
Matin v. Paul Revere- Sacramento S.C. - 1996
McDonald v. AIG - San Francisco S.C. - 1996
Guy v. Washington National - Los Angeles S.C. - 1996
Fain v. California Indemnity - Ventura S.C. - 1997
Hansen v. Philadelphia Life - Reno S.C.-1996
Wirth v. Transamerica - San Diego S.C. - 1996
McKenna v. American Contractors - Los Angeles S.C. - 1996
Moore v. Rivinius - San Francisco S.C. - 1997
Arnone v. Paul Revere - San Francisco S.C. - 1997
Vencor Hospitals v. Standard Life 7 Accident - Torrance S.C. - 1997
Mehring v. National Life - Los Angeles Federal Court - 1998
Robinson v. Robinson - Burbank S.C. - 1997
Streich v. Mitchell - San Francisco S.C. - 1997
Fisher v. Aetna - Anchorage S.C. - 1998
Grayhek v. UNUM - Los Angeles S.C. - 1998
LeBoy v. Provident - Los Angeles S.C. - 1998
Riggi v. Security Life - Denver S.C. - 1998
Bertz v. Allmerica - Denver S.C. - 1999
Wenska v. General American - Los Angeles S.C. - 1999
Barcenas v. Jackson National - San Diego S.C. – 1999

{A366792:}

**Prior Testimony – Continued**

Lungu v. Kaiser - Oakland S.C. - 1999
Farrel v. Paul Revere - San Francisco Federal Court - 1999
Hollis v. Provident - Mississippi F.C.  - 1999
Lawrence v. Provident - L.A.  - 1999
Story v. Safeco - Oregon - S.C.- 1999
Fullmer v. LANA - Idaho - 1999
Lutz v. Mega Life - San Diego - 1999
Hatt v. Provident - San Bernardino 1999
Barbero v. Blooming Kemper - Denver - 1999
Heutmaker v. Shields - Seattle - 1999
Rutherford v. Lloyds - Birmingham S.C. - 1999
Hale v. Provident N.  CA - 2000
Mocoso v. Prudential S.F. Arbitration - 2000
Western Bank v. Fears, Albuquerque - 2000
Stenger v. Provident, Milwaukee PC - 2000
Banta v. Provident, Tucson - 2000
Love v. LINA, Sacramento - 2000
Parsidano v. Union Central.  Phoenix - 2000
Yumukoglu v. Provident, Albuquerque - 2000
Sanders v. Paul Revere, Las Vegas - 2000
Pearson v. Barr, San Diego - 2000
Prabucki v. PR, Seattle - 2001
Archuleta v. Casico, Santa Fe - 2001
Campbell v. Rayal Maccabees, Phoenix - 2001
Magnetek v. CIGNA, Los Angeles - 2001
Fears v. Western Bank, S.C. Albuquerque - 2001
Campbell v. Paul Revere, Federal CT, Phoenix - 2001
Caso v. Braunstein, First Colony, LA, CA - 2002
Heatchcock v. TWA, Burlingame.  CA - 2002

## PUBLICATIONS

"The Generalist Expert in Insurance Litigation" –
<u>DEFENSE RESEARCH INSTITUTE</u> magazine, November, 1996.

JTT499-02                    * * * *

## TIM TERRY
### CONSULTANT, LIFE AND DISABILITY INSURANCE

PRESIDENT
CHUBB SOVEREIGN (1975-93)

EXECUTIVE VICE PRESIDENT
CHUBB LIFE AMERICA (1987-93)

MEMBER, BOARD OF DIRECTORS
CHUBB SOVERIGN LIFE (1964-93)
CHUBB LIFE AMERICA (1987-93)
UNITED LIFE (1987-91)
VOLUNTEER STATE LIFE (1987-91)
COLONIAL LIFE (1987-93)

128 DESERT WEST DRIVE
RANCHO MIRAGE
CALIFORNIA 92270
TELEPHONE (760) 770-4479
FAX (760) 770-4479
TAX ID# 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

## CURRICULUM VITAE

**Education:** BA, History, Stanford University; Chartered Life Underwriter (CLU).

**Career History:** Testifying and Consulting Expert (1994--), President, Chief Operations Officer, Chubb Sovereign Life Insurance Company (1975-93). Executive Vice President, Director. Sovereign Life Insurance Company (1964-75). General Agent, Agent, Brokerage Representative prior to 1964. Past Member Board of Directors, five life and/or disability insurance companies -- see detail on letterhead.

**Managing & Operating Experience:** *Life and Disability Claims* - Senior Officer, Company Claims Committee. Set Claims policy. Personally directed individual handling of pending contestable claims on a case by case basis from initial reporting to final disposition. Final authority regarding policy recessions, denial of benefits and litigation matters. *Life and Disability Underwriting* - Set policy for risk selection and performed oversight of its implementation. Coordinated underwriting policies with requirements of Reinsurers. *Reinsurance* - Negotiated reinsurance treaties; directed handling of reinsurance audits; managed relationships with reinsurers. *Compliance* - Dealt directly with State Departments of Insurance. Set company compliance policy and its administration. *Human Resources:* Set policy and personally directed handling of all aspects of such matters. *Sales* - Chief Marketing Officer and Sales Director. Designed, drafted, priced policies. Designed sales proposals, ledgers. Negotiated Agent, General Agent, Manager compensation contracts. Recruited, trained, supervised, terminated sales personnel. *Administration* - Setup and performed oversight: premium notice and lapse procedures. systems to monitor sales practices, Policy owner service functions. Formulated Company investment policies and practices. *Management* - Responsible for all Company operations.

**Experience As Testifying And Consulting Expert:** Over 200 engagements Nationwide-- Approximately 60% associated with Plaintiff) 40% associated with Defense. Over 50 instances of deposition/trial testimony. — Most frequent issue: Allegations of **bad faith** regarding life and disability claims, sales, underwriting or administrative practices.

**Continuing Education:** Delegate, Western Claims Conference (WCC) 1996, 1997, 1998, 1999, 2000, 2002: WCC is an industry sponsored forum for the presentation and discussion of life and disability claims issues.

{A366792:}

**Professional Affiliations:**  Past Director, Association of California Life Insurance Companies; Past Officer, Chartered Life Underwriter Chapter.

**Publications:**  "The Generalist Expert in Insurance Litigation".  *Defense Research Institute* - November **1996.**

**Military:**  Active duty, U.S. Army; U.S. Naval Reserve (Naval Intelligence) - retired with rank of Captain.  Awarded parachute Jump Wings by Israeli Defense Forces - 1988.



# JOHN S. GENCAVAGE
### EXAMINER OF QUESTIONED DOCUMENTS

140 HUNTER LANE, ~~HOUSE X X XX XX~~
HARRISBURG, PA 17112
(717) 469-0497

DIPLOMATE:
AMERICAN BOARD OF FORENSIC DOCUMENT EXAMINERS
FELLOW:
AMERICAN ACADEMY OF FORENSIC SCIENCES
MEMBER:
AMERICAN SOCIETY OF QUESTIONED DOCUMENT EXAMINERS

May 28, 2002

Michael R. Kelley, Esquire
McNees, Wallace & Nurick LLC
Attorneys At Law
P.O. Box 1166
100 Pine Street
Harrisburg, PA 17108-1166

Re:  Hall, et al v. CUNA MUTUAL

Dear Mr. Kelley:

The following is a report covering my examination of the below listed exhibits.  The documents were examined at the offices of John Enders, M.D. and Michael Cashdollar, M.D. 120 North 7th Street, Chambersburg, PA 17201 and the offices of Ernest Charlesworth, M.D. 144 South 8th Street, Chambersburg, PA 17201.  The purpose of this examination was to determine, if possible, whether or not Tommy B. Hall II wrote the questioned handwriting appearing on the Q-1 exhibit.

## QUESTIONED EXHIBITS:

Q-1.  One (1) Medical History form, dated 4-30-98, in the name of Tommy Bob Hall II, containing questioned handprinting under MEDICAL PROBLEMS 1. "CANCEROUS MOLE - REMOVED".

## STANDARDS:

The following items were submitted as documents containing known handprinting of Tommy B. Hall II:

S-1.  One (1) Falling Spring Medical Associates New Patient Information Record, dated 2-17-99, in the name of Hall II, Tommy B. (front side).

S-2.  One (1) Falling Spring Medical Associates New Patient Information Record, dated 2-23-99, in the name of Hall II, Tommy B. (front side).

S-3.  One (1) Medical History form, dated 4-30-98, in the name of Tommy Bob Hall II, except the entry under MEDICAL PROBLEMS 1. "CANCEROUS MOLE - REMOVED" and all entries under DATE and HOSPITALIZATIONS/SURGERY (front side).

Michael R. Kelley, Esquire
May 28, 2002
Page 2


OPINION:

Upon completion of a detailed examination and comparison of
the handprinting involved in this case, it is the opinion of
this examiner that the writer of the S-1 through S-3 exhibits,
Tommy B. Hall II, wrote the questioned handprinting "Cancerous
Mole - Removed" appearing under MEDICAL PROBLEMS on the Q-1
exhibit.

The questioned and standard writings compare favorably in gross
characteristics, including degree of skill, style, slant,
lateral alignment, writing movement, letter formations, proportions
and other characteristics.  All of these factors indicate that
Tommy B. Hall II wrote the handprinting in question.

If you have any questions, please contact me.

Respectfully submitted,

John S. Gencavage
Forensic Document Examiner


JSG/grg

PROFESSIONAL QUALIFICATIONS

**JOHN S. GENCAVAGE**
140 Hunter Lane
Harrisburg, PA 17112
(717) 469-0497
FAX (717) 469-7572

OCCUPATION:

Forensic Document Examiner

EMPLOYED:

Private Practice – July 1, 1989

EDUCATION:

Bachelor of Science 1977
York College of Pennsylvania
York, PA

Associate of Arts 1975
Harrisburg Area Community College
Harrisburg, PA

Questioned Document Examination Training Course 2/64 – 2/67
Pennsylvania State Police Crime Laboratory, Document Section
Harrisburg, PA

Questioned Document Course 4/64
United States Secret Service
Washington, D.C.

Seminar on Law Enforcement Photography 12/67
Eastman Kodak Company
Rochester, NY

Seminar on Law Enforcement Photography 11/71
Eastman Kodak Company
Harrisburg, PA

Seminar – Survey of Questioned Document Problems 7/75
FBI Academy
Quantico, VA

Signature Seminar 2/88
American Academy of Forensic Sciences Meeting
Philadelphia, PA

Workshop – Identification of Office Copiers 2/88
American Academy of Forensic Sciences Meeting
Philadelphia, PA

Photocopier Workshop 8/89
American Society of Questioned Document Examiners Conference
Arlington, VA

Signature Workshop 8/90
American Society of Questioned Document Examiners Conference
San Jose, CA

Signature Workshop 8/91
American Society of Questioned Document Examiners Conference
Lake Buena Vista, FL

Expert Witness Workshop 8/91
American Society of Questioned Document Examiners Conference
Lake Buena Vista, FL

Deposition Testimony Workshop 8/91
American Society of Questioned Document Examiners Conference
Lake Buena Vista, FL

Canon Fax Workshop 8/91
American Society of Questioned Document Examiners Conference
Lake Buena Vista, FL

Fraudulent Documents Workshop 2/92
American Academy of Forensic Sciences Meeting
New Orleans, LA

Forensic Examination of Counterfeit Documents 8/94
American Society of Questioned Document Examiners Conference
Long Beach, CA

Signature Workshop 8/92
American Society of Questioned Document Examiners Conference
Milwaukee, WI

Video Spectral Examination of Documents Throughout the Spectrum 2/96
American Academy of Forensic Sciences Meeting
Nashville, TN

Difficult Handwriting Problems - Workshop 8/97
American Society of Questioned Document Examiners Conference
Scottsdale, AR

The Examination of Medical Records 5/97
Miami, FL


**WORK EXPERIENCE:**

Pennsylvania State Police Training School 10/57 - 4/58
Hershey, PA  (Enlisted 10/16/57)

Pennsylvania State Police, General Police Duties 1958 -1960
and Equestrian Detail, various locations in the Commonwealth of PA

Pennsylvania State Police Criminal Investigator 1960 - 1964
Harrisburg, PA

Questioned Document Training 1964 - 1967
Photography and other Questioned Document related duties,
Pennsylvania State Police Crime Laboratory, Document Section,
Harrisburg, PA

Forensic Document Examiner and Supervisor 1967 - 1982
Pennsylvania State Police Crime Laboratory, Document Section,
Harrisburg, PA

Assistant Director, Pennsylvania State Police Laboratory 1982 - 1985
Division, Harrisburg, PA

Chief Document Examiner, Pennsylvania State Police 1982 - 1987
Laboratory Division, Document Section (Retired 12/31/87)

Forensic Document Examiner 12/87 - 6/30/89
U. S. Treasury Department, Bureau of Alcohol, Tobacco and Firearms
Forensic Science Laboratory, Rockville, MD

Private Practice - July 1, 1989

## LECTURER - INSTRUCTOR - GUEST SPEAKER:

From 1966 to date served as a lecturer, instructor and guest speaker
on the topic of Questioned Document Evidence and related subjects on
numerous occasions.  The presentations were adapted to meet the needs
of a wide variety of groups.  The following is a list of some of those
groups:

Pennsylvania State Police Academy and Training Centers 1966 - 1987

Harrisburg Area Community College, Police Science/Administration and
Criminalistics Departments 1975 - 1987

Pennsylvania Game Commission and Northeast Wildlife Association
Conference, Harrisburg, PA (Laboratory Tour and Lecture) 4/76

Pennsylvania Engineering Society, Harrisburg, PA 12/76

York College of Pennsylvania, Specialized Photographic Techniques
Spring 1977

Federal Law Enforcement Agents including Military Police and
Investigators, Meeting, New Cumberland Army Depot 1978

Dickinson School of Law, Law Students (Laboratory Tour and Lecture)
1979 - 1987

Shippensburg University, Criminalistics and Criminal Justice students (Laboratory Tour and Lecture) 1979 – 1987

Pennsylvania State University, State College , PA, Seminar, Pennsylvania Association of Arson Investigators, June 1985

National Council of Higher Education Loan Programs, Fraud Conference, San Diego, CA, January 1986

Exchange Club of Harrisburg, PA July 1986

Interviewed as a Guest on Public Television show "Taking Note" Host Lynn Hinds, State College, PA, broadcast 1986

Pennsylvania Higher Education Assistance Agency "Workshop on Detection and Prevention of Fraud, Errors and Abuse in the Government Student Loan Program" Philadelphia, PA, January 1987

CONRAIL CORPORATION white Collar Crime Investigators/Auditors Conference Philadelphia, PA, March 1987

The Institute of Internal Auditors Fraud Conference on Control, Deterrence and Investigation, Atlanta, GA September 1987

The Institute of Internal Auditors Fraud Conference on Control, Deterrence and Investigation, Chicago, IL September 1989

Pennsylvania Association of Private Investigators, September 2001

Lehigh County Pennsylvania Bar Association, February 2002

Assisted in training eleven Forensic Document Examiners for the Pennsylvania State Police and other Agencies between 1966 and 1982

During the Spring of 1970, assisted in training two Malaysian Police Officials, Acting Commissioner Ding Hong Kee and Superintendant Ahmad Bin Haji Abdul, in cooperation with a program sponsored by the U.S. Department of State, Agency for International Development, Washington, D.C.

As Chief Document Examiner, 1982 – 1987, responsible for all Forensic Document related training including the training of three new examiners for the Pennsylvania State Police

Instructor, Federal Law Enforcement Training Center, Glynco, GA

**CONSULTANT:**

As Chief Document Examiner, served as a consultant to the various agencies of the Commonwealth of Pennsylvania, concerning safety features and other specifications for various official documents.

Assisted the Attorney General's office and Department of Transportation in setting up a program to detect altered odometer readings and Fraud in Motor vehicle Transaction Documents for the prupose of prosecution and consumer protection.

## PUBLICATIONS AND PROFESSIONAL PAPERS:

"Facsimile Signatures Produced By Gelatin Transfer Duplicator-Recognition And Identification"  Journal of Forensic Sciences

"Recognition And Identification Of Multiple Authorship" Journal of Forensic Sciences

"Water Soluble Paper As Evidence" Journal of Forensic Document Examination

"Examination Of Torn And Cut Paper" Journal of Forensic Document Examination

"Detecting And Identifying Forged Signatures" Director's Memorandum, Bureau of Alcohol, Tobacco and Firearms, Department of the Treasury

"The Document Section" Pennsylvania State Police Laboratory Manual

"Questioned Document Evidence" a handout prepared for distribution to Special Agents of the Bureau of Alcohol, Tobacco and Firearms

## CERTIFICATIONS:

Diplomate, American Board of Forensic Document Examiners, Certified 8/81, Recertified 8/85, 8/90, 8/95, 8/00.

Certified Instructor and Lecturer, Pennsylvania State and Municipal Police Officers Training Commission, March 26, 1976 - Certificate #MPI 663, cancelled 2000.

## PROFESSIONAL AFFILIATIONS:

Fellow – American Academy of Forensic Sciences
          1988 Questioned Document Section Program Chairman
          Questioned Document Section Secretary 1993 – 1994
          Questioned Document Section Chairman  1995 – 1996

Member – American Society of Questioned Document Examiners

Life Member – International Association for Identification

Member – Northeastern Association of Forensic Sciences

**COURT TESTIMONY:**

Federal, State and Local Courts, Hearing Boards and Commissions. Qualified as a Forensic Document Examiner and testified as an expert concerning a wide variety of questioned document problems in the majority of the County Courts of Record in the Commonwealth of Pennsylvania since 1967.  Testified in Commonwealth Court, State Civil Service Commission Hearings, Philadelphia Police Department Disciplinary Board, Investigative Grand Juries and Federal District Courts: Charlotte, NC, Philadelphia and Harrisburg, PA, Wichita, KS, Alexandria, VA, Rochester, NY, Arbitration Board Hearing, Stamford, CT, Superior Court, Monmouth County, NJ and Chenango County, NY.

## CLERK'S EXHIBIT LISTING

JUDGE CHRISTOPHER C. CONNER

Nancy Hall, et al. v. CUNA Mutual Group, et al., Case No. 1:01-CV-1265

Submitted by Defendants CUNA Mutual Group, CUNA Mutual Insurance Society

| Exhibit Initial and No. | Description of Object or Item | Document Dated | Identified in Court | Date Admitted | Witness on Stand |
|---|---|---|---|---|---|
| D – 1 | Pathology Report – The Chambersburg Hosp. | 4/13/92 | | | |
| D – 2 | Physician Progress Notes | 4/30/98 | | | |
| D – 3 | Intake Report – Dr. Charlesworth | 4/30/98 | | | |
| D – 4 | Members Home Mortgage Protection II Application | 12/01/98 | | | |
| D – 5 | Exam Report – Dr. Charlesworth | 1/15/99 | | | |
| D – 6 | Minor History & Physical Examination – Dr. Chicklo | 1/22/99 | | | |
| D – 7 | Patient Information Record – Falling Spring Medical Associates/Dr. Enders records | 2/17/99 | | | |
| D – 8 | Letter to James M. Chicklo, M.D. from Michael R. Cashdollar, M.D. | 2/17/99 | | | |
| D – 9 | New Patient Information Record – Falling Spring Medical Associates/Dr. Cashdollar | 2/23/99 | | | |
| D – 10 | Colonoscopy Report from The Chambersburg Hospital | 3/15/99 | | | |
| D – 11 | New Patient Clinic Visit Report/The Johns Hopkins Hospital/William Sharfman | 7/15/99 | | | |
| D – 12 | Medical Record/National Institutes of Health/Ho Pak, M.D. | 9/25/99 | | | |
| D – 13 | Medical Record/National Institutes of Health/David M. Weinreich, M.D. | 9/25/99 | | | |
| D – 14 | Message slip for Brenda from Barb/Dr. Hurley's office | 1/31/00 - 2/1/00 | | | |
| D – 15 | Summary of Tommy Hall's Medical Records | undated | | | |

| Exhibit Initial and No. | Description of Object or Item | Document Dated | Identified in Court | Date Admitted | Witness on Stand |
|---|---|---|---|---|---|
| D – 16 | Chronology of Events | undated | | | |
| D – 17 | Death Certificate | 11/4/99 | | | |
| D – 18 | Denial of Coverage letter | 02/10/00 | | | |
| D – 19 | Insurance Policy on life of Tommy Hall | | | | |
| D – 20 | Claim notice from Mrs. Hall | 11/04/99 | | | |
| D – 21 | The Ansfield/Larsen evaluation letter | 08/24/01 | | | |
| D – 22 | Group Mortgage Insurance Schedule of Life Benefits | | | | |
| D – 23 | Message slip of Brenda Larsen | 12/06/99- 12/13/99 | | | |
| D – 24 | CUNA message note | 12/15/99 | | | |
| D – 25 | Underwriting Risk Evaluation Worksheet | 12/99 | | | |
| D – 26 | CUNA request for information to Mrs. Hall | 12/15/99 | | | |
| D – 27 | CUNA's underwriting guidelines for Home Mortgage Protection II policies | | | | |
| D – 28 | Summary information regarding claims, claims denied, claims rescinded and other statistical information | | | | |
| D – 29 | CUNA's policies and procedures manuals | | | | |
| D – 30 | Fraud Report: "Who Commits Insurance Fraud", Pa. Ins. Fraud Prev. Authority | Fall, 2002 | | | |
| D – 31 | Fraud Statistics, Pa. Ins. Fraud Prev. Authority | Sept., 2002 | | | |
| D – 32 | Fighting Insurance Fraud: A Priority in Pennsylvania, by Mike Fisher | April 20, 2001 | | | |
| D – 33 | Patriot Federal Credit Union File on Mrs. and Mr. Hall | | | | |
| D – 34 | Cressler Trucking Personnel File | | | | |
| D – 35 | NIH Re-evaluation of slides from 1993 mole | August, 1999 | | | |

| Exhibit Initial and No. | Description of Object or Item | Document Dated | Identified in Court | Date Admitted | Witness on Stand |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Nancy Hall, individually and** | : | **CIVIL ACTION - LAW** |
| **as the Representative and** | : | |
| **Administratrix of the Estate of** | : | |
| **Tommy Hall, deceased, her husband,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **1:01-CV-1265** |
| | : | |
| **Cuna Mutual Group, Cuna Mutual** | : | |
| **Insurance Society,** | : | |
| **Defendants** | : | **(Judge Christopher C. Conner)** |

## VERDICT FORM

1) Did CUNA breach the insurance contract when it rescinded the Certificate of Insurance on the life of Tommy Hall?

   Yes _____          NO _____


If your answer to Question 1 is "No", go to Question 3.  If your answer to Question 1 is "Yes", I instruct you to enter the total amount of damages in Question 2 for Plaintiff as $55,460.00.

2) What is the total amount of damages you award to Plaintiff for breach of contract?

   _____

Proceed to Question 3.

3)      Did CUNA have any reasonable basis for denying Plaintiff's claim for
        benefits?

        Yes _____          No  _____

If your answer is "Yes" to Question 3, your deliberations are complete and you
should return to the courtroom.  If your answer is "No" to Question 3, please
proceed to Question 4.

4)      Did CUNA's representatives know that they did not have any reasonable
        basis for denying the claim, or recklessly disregard their lack of a
        reasonable basis for denying the claim?

        YES  _____          NO  _____

If you answered "No" to Question 4, your deliberations are complete and you
should return to the courtroom.  If you answered "Yes" to Question 4, proceed to
the courtroom for further instructions.


                                        _____
                                        Jury Foreperson

Thank you.  Please return to the courtroom.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Nancy Hall, individually and as the Representative and Administratrix of the Estate of Tommy Hall, deceased, her husband, **Plaintiff** | : : : : : : | CIVIL ACTION - LAW |
| **v.** | : : | 1:01-CV-1265 |
| Cuna Mutual Group, Cuna Mutual Insurance Society, **Defendants** | : : : | (Judge Christopher C. Conner) |

## <u>VERDICT FORM – PUNITIVE DAMAGES</u>

1)    Were CUNA's actions in denying Plaintiff's claim so outrageous and egregious that you find that CUNA is liable for punitive damages?

YES _____      NO _____

If you answered "No" to Question 1, your deliberations are complete and you should return to the courtroom.  If you answered "Yes" to Question 1, proceed to Question 2.

2)    What amount do you award for punitive damages?

_____

_____
Jury Foreperson

Thank you.  Please return to the courtroom.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Nancy Hall, individually and<br>as the Representative and<br>Administratrix of the Estate of<br>Tommy Hall, deceased, her husband,<br>Plaintiff | : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION - LAW |
| v. | : <br> : <br> : | 1:01-CV-1265 |
| Cuna Mutual Group, Cuna Mutual<br>Insurance Society,<br>Defendants | : <br> : <br> : <br> : | (Judge Christopher C. Conner) |

## OFFER OF JUDGMENT
## <u>PURSUANT TO FED. R. CIV. P. 68</u>

TO:  Stephen R. Pedersen, Esq.
       Catherine Mahady-Smith, Esq.
       Attorneys for Plaintiff

Defendants CUNA Mutual Insurance Society and CUNA Mutual

Group (together "CUNA"), by and through their attorneys McNees Wallace

& Nurick LLC, hereby offer to allow judgment to be taken against CUNA, in

the amount of Two Hundred Seventy-Five Thousand Dollars ($275,000),

with costs, as defined by 28 U.S.C. § 1920, then accrued.  By accepting

this offer of judgment, Plaintiff expressly waives any right to recover

attorneys' fees and pre-judgment interest.

McNEES WALLACE & NURICK LLC

By _Michael R. Kelley_____

Michael R. Kelley
Charles T. Young, Jr.
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
Phone: (717) 237-5322
Fax: (717) 237-5300

Attorneys for Defendants

Dated: December 19, 2002

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Nancy Hall, individually and** | : | **CIVIL ACTION - LAW** |
| **as the Representative and** | : | |
| **Administratrix of the Estate of** | : | |
| **Tommy Hall, deceased, her husband,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **1:01-CV-1265** |
| | : | |
| **Cuna Mutual Group, Cuna Mutual** | : | |
| **Insurance Society,** | : | |
| **Defendants** | : | **(Judge Christopher C. Conner)** |

**CERTIFICATE OF SERVICE**

I, Charles T. Young, Jr., Esq., hereby certify that on this 19TH day of December,

2002, the foregoing Offer of Judgment was served upon the following persons by the

means indicated below:

**U.S. REGULAR MAIL AND**
**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Stephen R. Pedersen, Esquire
214 Senate Avenue, Suite 602
Camp Hill, PA 17011

Catherine Mahady-Smith, Esquire
3115-A N. Front Street
Harrisburg, PA 17110

Charles T. Young, Jr.

Attorney for Defendants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date the foregoing document was

served by first-class mail, postage prepaid, upon the following:

Stephen R. Pedersen, Esquire
214 Senate Avenue, Suite 602
Camp Hill, PA  17011

Catherine Mahady-Smith, Esquire
3115-A N. Front Street
Harrisburg, PA  17110

Michael R. Kelley

Counsel for Defendants
CUNA Mutual Group and CUNA Mutual
Insurance Society

Dated:  December 23, 2002